## HALL v. LAY.

1. The Judges of the County Courts of this State, have no authority to appoint guardians, either for the persons or estates of minors whose fathers are living.
2. Where it appears, from a written memorandum signed by counsel, that they have consented, that a commission to take the testimony of non-resident witnesses, might issue without the names of the commissioners being therein inserted; and the commission is filled up afterwards, no exception can be taken for this irregularity.

Writ of Error to the Circuit Court of Cherokee County.

ACTION of detinue for seven slaves. The defendant pleaded *non-detinet*, and other pleas. Verdict for the defendant and judgment thereon.

In the progress of the trial, a bill of exceptions was take by the plaintiff, which declares that several questions were made with respect to the admisison of the copy of the will of Mary Hall. This copy is certified by one, who styles himself sole judge, and also clerk of one of the Courts of Ordinary of the State of South Carolina.

A particular description of the certificate is unnecessary, as the Court considered the questions, arising out of it, to be the same as those determined in Huff v. Cox *supra*.

The defendant gave in evidence, the exemplification of certain proceedings by the Judge of the County Court of Cherokee County, from which it appears. that the defendant was appointed guardian of certain minor children of the plaintiff. All of these children except one, were more than fourteen years old; and the record of the appointment sets forth, that such of the children as were over that age, desired the Court to appoint the defendant their guardian.

The plaintiff moved the Circuit Court to exclude the depositions of certain witnesses, which were taken by virtue of a commission, which was issued without inserting therein the names of the commissioners, by whom it was afterwards executed and returned. Appended to the commission are inter-

rogatories and cross interrogatories; in the caption of the interrogatories, is the following memorandum : By virtue of authority from the Circuit Court of Cherokee County, and by consent of parties, you will proceed to take the testimony of—naming certain witnesses, to whom you will propound the following interrogatories : At their conclusion is another memorandum in these words, The commissioners, who may take the depositions will please propound the same interrogatories to the other witnesses. These memoranda are signed by the defendant's counsel; and immediately after, follow the plaintiff's cross interrogatories, signed by his counsel. The Circuit Court considered these memoranda as evidence of a consent that the commission should be filled up after it was issued, and refused to exclude the depositions from the jury. The plaintiff excepted to the several matters before mentioned.

He now prosecutes this writ of error, and assigns, that the Circuit Court erred in the several points excepted to.

GOLDTHWAITE, J.—1. It is evident from the constitution of society, that the relation of guardian and ward, must have existed for ages beyond the written history of mankind; and from this, it would seem reasonable to infer, that there could not be much difficulty in ascertaning, at the present time, the precise rules by which this relation is to be governed. But this is so far from being easy, that there is no subject more involved in obscurity ; when it becomes necessary to trace this relation a step beyond our statute books. Nor is it so alone with respect to guardian and ward ; in the more interesting relation of parent and child, it, at this day, is a question of profound difficulty, whether the father may not be divested of the most necessary means to control his children, and compelled to yield his actual rights to another, whenever his children happen to be invested with an estate.

Neither time, nor the pressing duties which now devolve on us, allow of more than a brief examintion of this interesting subject; and that only so far as is immediately connected with the case before us.

If a child is induced to regard any other than his father, as custodian of his property, it iscertainthat parental influence must

Hall v. Lay.

be greatly weakened, if not entirely destroyed; and whatever may be considered as the rule at this day, we cannot doubt there was a period once known to the common law, when the father had the right to the custody and control of his child's estate, in the same manner as he now has of his person. Thus it is said by Lord Coke, if an estate is left to an infant, his father, by the common law, is the guardian, though he must account for the profits. [Coke on Litt. 88.] And this is cited by Blackstone with seeming acquiescence. [1 Black. Comm. 461.] Long before personal property acquired that relative importance it now sustains, the custody of the person, and lands of a male child under fourteen years descended, on the death of the father, to the rest of kin, who could never by any possibility inherit the estate, in the event of the death of the child. [Littleton S. 123; 1 Black. Comm. 461.]

This custodian was termed a guardian in socage, and he stood to the child in *loco parentis.* It would be reasonable to conclude that one from whom a right is derived by descent, must have possessed the powers, which at his death descend to another; in other words, that the father possesses at least, as much power over the person and estate of his child, as a guardian in socage does over that of his ward. But on the contrary of this, we find it frequently stated in the books, that the father, as natural guardian, has no control over the estate of his ward. [May v. Calder, 3 Mass. Rep. 55.) And in Dayley v. Talferry, 1 P. Wms. 285, it was held, that an executor is not discharged from his liability to account to an infant, if he pays the legacy to the father, who proves to be insolvent.

A more reasonable doctrine however, has been held in England, in comparatively recent cases, which declares, that a widow is guardian in socage to her daughters, until they attain the age of fourteen years, of their freehold and copyhold estates; and that she is entitled to elect whether she will let the estate, or occupy it for their benefit. [King v. Oakley, 10 East 490; King v. Wilby, 2 M. & S 504.]

It is not our intention now, to examine how far the doctrine that the father has no authority over the estate of his child, is correct; or when it arose and was engrafted on our law, if, indeed such be the case. It will probably be found to be sus-

tained mainly on the fact, that a Court of equity will sometimes interpose its aid, to prevent the personal estate of an infant, from being squandered, and require the father to give security, to have it forthcoming when the child becomes of age ; but even then, we apprehend, it will be found, when the father has been divested of the custody of the estate, he was unwilling to give the requisite security ; and if the father is unable to give such security, and another is invested with the custody of the estate, we very much doubt, if he has any claims to be considered in the place of a guardian. [See Ex parte Hopkins, 3 P. Wms. 152.] If a maintainance is necessary to be allotted to the child, when his estate is held under such circumstances, we think no Chancellor would direct it to be expended, independent of the control of the father, unless indeed, under very peculiar circumstances, not affecting the principle, that the father has the legal right to control his children, whether with or without a separate estate.

Let us examine our statutes, to ascertain how far the common law has been modified.

The act of 1806, Aikin's Digest 220 S. 21, provides, "that the Chief Justice of the Orphan's Court in each County, when and so often as there shall be occasion, is hereby empowered to allow of guardians that shall be chosen by minors of fourteen years of age ; and it shall be lawful for the said Court to appoint guardians for such as shall be within or under that age."

The same section also, authorises the Chief Justice to cite any minor above that age, to appear before him, and choose a guardian; and if he neglect or refuse to appear, or when appearing he refuses to choose a guardian, in every such case, the Orphan's Court shall have the same power to appoint the guardian, as if such minor were under the age of fourteen years.

By another section of the same act, it is provided, that every guardian *in socage,* or other guardian shall within three months after his appointment, make an inventory of the estate of his ward, and shall once in every year exhibit an account ; and, that he may be displaced if he remain in default, or on good and sufficient cause being shown. All these powers are now vested in the Judges of the County Courts.

Although these enactments speak of minors generally, they evidently were never intended to curtail or abridge the natural right of the father; because it is clear they contemplate the custody, by the guardian of the person, as well as of the estate of the ward; hence if they stood alone on the statute book, we should conclude without hesitation, that no power is or was intended to be conferred on the Judges of the County Courts, to appoint guardians to minors whose fathers are living. But if this was even doubtful, the act of 1822, Aikin's Digist 221 S. 10, which authorises the appointment of guardians by the will of the father, amounts to a demonstration, that he is the natural guardian. This act provides, that any father may, although he is not himself of the age of twenty-one years, by his will devise the custody and tuition of his child, who has never been married, (although it be not born,) during the infancy of the child, to whomsoever he will. And this guardian is to have the custody also of the estate of his ward, if he will give the necessary security.

It would be most absurd to imagine that the father is not invested with the power during his life, but that he may devise to *whomsoever he will*, to be executed after his death.

That a Court of Chancery, under some very peculiar circumstances, may interpose to divest the father of this natural right to the custody and control of his children, may be conceded; as it may also be, that the same Court has the power to provide for the security of the infants estate. But that is the only Court on which the law has hitherto conferred this extraordinary power.

The record shows in this case, that the father of the minors for whom a guardian was appointed by the Judge of the County Court, was living and yet living. The counsel of the minors can give no authority to the Court in such a case as this; the Judge had no warrant in the laws of the land, to make any guardian for minors thus circumstanced; his act is simply void, and conferred no authority on the defendant to assume the rights, or perform the duties of a guardian.

On this point, the judgment of the Circuit Court is reversed and the case is remanded.

It is possible that the Judge of the County Court may have been led into this error, by the manner in which the case of Huie v. Nixon, 6 Porter 77 is reported. What is stated in the head note, as the decision of the Court in the opinion, is nothing more than an illustration of the powers of the County Court, over the subject of guardianship.

The question then was, whether the *mother* had a permanent right to the wardship of her child, its father being dead. We then said the assertion of such a right could not be supported, because it would no doubt, be competent for the County Court, to set aside the claim of the father to the wardship of his child's estate in favor of a stranger, when it appeared that the father was unfit for that responsible statioin. It is apparent now that no such point was decided, as is stated in the note of the case, and the illustration was used incorrectly, we admit, to show that the mother had no such right as was claimed for her.

2. We consider the written memoranda attached to the interrogatories and cross interrogatories, as showing the consent of plaintiff's counsel, that the commissioners should be named and names inserted after the commission was forwarded to be executed. The direction is to the commissioners, who may take the deposition, to do certain acts; if the commission was not intended to be blank as to the names of the commissioners, the direction would probably have been to the commissioners named in the commission. At all events, we feel authorised to presume that the commission was attached to the interrogatories, and that the consent applied to the then condition of it.

The other questions raised by the assignments of error, were decided by this Court at its last term, in the case of Huff v. Cox, supra.

Let the judgment be reversed and the cause remanded.