## Wood v. Wood, et al.

1. The father, as the guardian by nature, is entitled to the direction and control of the person and property of his child until it attains the age of twenty-one years, subject to the right of chancery under some circumstances to place the child under the pupilage of another.

2. Where the remedy at law and in equity, is concurrent, the statute of limitations applies alike in both forums. In the case of a *strict trust*, and where a fraud has been practised, the statute will *not* operate *proprio vigore;* unless perhaps the trustee in the first case has placed himself in a position antagonistical to the *cestui que trust,* or in the latter until the fraud has been discovered.

3. The act of 1806, " concerning wills and testaments," &c. gives an action at law to a legatee against an executor, the limitation to the prosecution of which is six years; and after the expiration of that period a suit in equity, cannot be brought for the recovery of a residuary legacy, &c.

4. A court of chancery will not entertain a bill where the amount in controversy is so inconsiderable as seventeen dollars and fifty cents.

5. The executor purchased from the United States, paid for and received the evidence of title for a tract of land; afterwards he sold to the testator a moiety, who paid the money, but received no written evidence of his purchase; the testator in his lifetime, relinquished his right to the executor for a valuable consideration without writing: *Held,* that the executor was not bound to account for the land as a part of the testator's estate.

6. An admission made for the purpose of effecting an amicable settlement of a matter in dispute, is inadmissible against the party making it.

7. *Semble*—executors as to whom a bill in chancery is dismissed, are competent witnesses for a co-executor, as against whom the bill is prosecuted, where it appears independently of their testimony, that they are not responsible to the complainant or their co-executors.

Writ of error to the Court of Chancery sitting at Columbiana.

Wood *v.* Wood, *et al.*

ON the 21st of February, 1838, the plaintiff in error, filed his bill against Joseph Wood, his father, and Ransom and Person Davis, executors of the last will and testament of William Davis, deceased, setting forth, that on the 15th day of September, 1821, William Davis, who was the maternal grand-father of the complainant, devised and bequeathed to the children of Sally Wood, the complainant's mother, certain negro slaves, particularly named, and one sixth part of the testator's estate, not specially disposed of by that will: That the testator's wife and the complainant's mother, were then dead; and the testator dying shortly thereafter, the executors in the month of Ocber following, took upon themselves the execution of his will.

It is alleged that personal property of the testator, amounting in value to four or five thousand dollars, came to the hands of the executors, and was sold by them; in addition to which, he left valuable real estate, which Person Davis appropriated to his own use for the sum of six hundred dollars, not more than an eighth or tenth of its value. That the executors had paid to Joseph Wood, between five and six hundred dollars for the complainant, his brothers and sisters, which money Joseph Wood had invested in the purchase of a negro woman and children.

The complainant states the names and ages of the children of Sally Wood, from which it appears that they are six in number, as also the legatees, &c. of William Davis deceased, who are the same number. *Further*, that in consequence of the minority of his children, Joseph Wood, received from the executors a part of their general residuary legacy, and all the slaves specifically bequeathed to them, and has ever since employed them for his own use and benefit.

The bill, after stating all these several matters, (with others that need not be noticed) with much particularity, prays an account against the executors and Joseph Wood, for what may be due to the heirs of Sally Wood, under the will of their grand father, &c.

Joseph Wood, in his answer denies that he ever received or pretended to hold under the will of William Davis, the negroes specifically bequeathed, and affirms that these slaves were not the property of the testator at the time of his death, having been given by him to the defendant many years previously. He

admits that he received from the executors a negro man named Bob, in 1822, who was worth but little, but would have sold for five hundred dollars; this slave he exchanged for another, named in his answer, and paid as the difference in value, the sum of fifty dollars.

The defendant also admits, that he received from the executors, five hundred and fifty-six dollars, in cash; but denies that he invested the same, or any part of it, in a negro woman. Admits that the executors paid him sixteen dollars, being one-sixth of the cash on hand; and that Person Davis paid him one hundred dollars for a claim set up by this defendant to one-sixth of a tract of land, then supposed to have been the property of the testator, at his death, but which he insists, was the individual property of Person Davis.

Defendant avers that he has always been willing to settle with the complainant, his brothers and sisters; has made repeated efforts to do so, but so far as the complainant is concerned, all attempts at a settlement have proved unavailing.

Ransom and Person Davis confirm by their answers, the facts stated by Joseph Wood—deny that they have in their hands any more of the estate of their testator than belongs to them; and insist that they have made a full and fair settlement of their executorship.

Person Davis, insists upon the statute of limitations in bar of the complainant's bill. All the defendants state in their answers the value of the hire of the slaves in the possession of Joseph Wood, which the complainant insists are subject to distribution; and they all concur in stating the reason why the testator mentioned in his will the slaves he had previously given, to have been to manifest to his children, that his bounty was bestowed equally on all.

Accompanying the answer of Person Davis as an exhibit, is a transcript from the record of the Orphans' Court of Dallas county, of the probate of the will of William Davis, deceased, an account of the appraisement and sale of the personal property of the testator, together the account current of the executors, which appears to have been exhibited for allowance and final settlement on the 5th of April, 1824. The usual order of publication appears to have been made, but no further action was had by the Court upon the account. At the foot of the ac-

count, the executors state a balance against themselves of two hundred and eighty-nine dollars and forty-three 3-4th cents.

The testimony of several witnesses are sent up with the record, but the substance of the evidence so far as pertinent to the points here made, will sufficiently appear from the opinion of the Court, so as to render its recital unnecessary.

The bill, answers and proofs, were referred to the master to inquire into, and report upon the several matters of account put in issue by the pleadings. Upon the coming in of the report, exceptions were thereto filed, and after argument before the Chancellor, it was adjudged, that as to the executors of William Davis, the statute of limitations operated as a bar to the complainants suit against them; and thus far the bill was dismissed, the report set aside, and the cause again referred as to the claim against Joseph Wood. The master, in his second report, states the complainant is entitled to recover of his father, the sum of five hundred and ninety-two dollars and fifty-eight cents, that being the aggregate of one-sixth of the value of the slave and his hire, and the like proportion of the monies received by the father for his children, with interest thereon, excepting the sixteen dollars, one-sixth of the cash in testator's hands at the time of his death; in respect to which the the account is entirely silent. The report also proceeded to state the value and names of the slaves specifically bequeathed, as also the yearly sums at which they would have hired from the time of the testator's death, and referred it to the Chancellor to determine whether these slaves passed by the will.

The Chancellor determined that the slaves bequeathed to the children of Sally Wood, did not pass by the will, the testator having previously given them to Joseph Wood; but as to the several other sums reported to be due to the complainant, the report was confirmed and a decree rendered in his favor, in which it was adjudged that each party pay his own costs.

It is now assigned for error, that the Chancellor erred,

1. In dismissing the plaintiff's bill as to the defendants, Ransom and Person Davis.

2. In decreeing that certain slaves named in the second report of the master, were the property of the defendant, Jo-

seph Wood, and that the plaintiff had no interest in them under the will of his grand father.

PECK, for the plaintiff in error, insisted,

1. Length of time did not bar the plaintiff's suit, as against the executors of Wm. Davis. The case does not come within the principle of Maury's adm'r v. Mason's adm'r, 8 Porter, 211: See, also, Decouche v. Savatier, 3 Johns. Ch. Rep. 216–7; Arden v. Arden, 1 ibid. 313; Gist, *et al.* v. The Heirs and Reps. of Cattell, 2 Dess. Rep. 53.

2. The evidence, it is conceived, does not show that the testator had previously given to Joseph Wood, the negroes specifically bequeathed to his children; and the testimony of the executors, though taken after the dismissal of the bill, as to them, is inadmissible in favor of their co-defendant; for their evidence is exculpatory of themselves.—Gresley's Eq. Ev. 259; Croft v. Pyke, 3 P. Wms. 180; Bellow v. Russell, 1 B. & B. 96; Mulvany v. Wilkes, ibid. 413.

CHILTON, for the defendants.

1. The statute of limitations operates a bar to the plaintiff's suit against the executors. In Maury's adm'r v. Mason's adm'r, 8 Porter, 222, it was decided, that where the remedy is concurrent at law and in equity, the statute will be applied alike in each Court. This principle here applies, for the statute gave to the complainant an action of account, which he could have prosecuted, had he so elected.

The statute need not be insisted on, in the pleadings, if it appear from the bill to have completed a bar.—Sims v. Canfield, ex'r, &c. 2 Ala. Rep. 555.

The answers of the executors affirm, that they have fully settled their accounts, and distributed the assets, and that the complainant, through his father, has received his full share.— Hall v. Lay, 2 Ala. Rep. 529, shows that the father, as the natural guardian, is authorised to receive a legacy, or distributive share of his infant son.

The amount due to the complainant from the estate of his grand-father, (even supposing that the executors retain in their hands the balance, according to the account they presented to the Orphan's Court for settlement) is so small, that a bill would not be entertained for its recovery.

2. In respect to the negroes specifically bequeathed, the evidence shows that they were not the testators at his death, but had been given by him to Joseph Wood, years previously.— The admissions made by the father for the purpose of effecting an amicable settlement with the complainant, his brothers and sisters cannot in any point of view prejudice his rights.—Minor's Rep. 225; 5 Paige's Rep. 104; 4 Wend. Rep. 292.

The common law rule, which perhaps might exclude the executors as witnesses, is no longer in force; the reason of it, has ceased since the statute of distributions in England; and such is also the result of legislation in this country.—Johnson v. Rankin, 3 Bibb's Rep. 87; Respass v. Morton, Hardin's Rep. 226; Pillow v. Shannon, 3 Yerger's Rep. 508; Studwell v. Palmer, 5 Paige's Rep. 166. But the question of their competency is not raised by the assignments of error, and cannot avail if it were; inasmuch as the objection was not made in the Court of Chancery.

COLLIER, C. J.—1. In Hall v. Lay, 2 Ala. Rep. 529, it was decided, that the Orphan's Court does not possess the power under the legislation of this State to appoint a guardian of the person or estate of a minor, whose father is living. But the father himself, as the guardian by nature, is entitled to the direction and control of the person and property of his child, until it attains its majority; subject, however, to the right of chancery, under some circumstances, to place the child under pupilage of another, and to provide for the security of the estate. Such being the law, it was entirely competent for the executors of Wm. Davis to place in the hands of Joseph Wood, that portion of the testator's estate, which was bequeathed to his children. In fact, the frame of the bill in the case before us, very clearly indicates that such a disposition of the plaintiff's legacy, is not complained of; but it is insisted that the executors have not fully accounted with the natural guardian; and hence an account is sought against the executors and the father, and a decree prayed for the amount of their respective liabilities. We will then consider the executors discharged to the extent to which they have accounted with Joseph Wood, and inquire whether the plaintiff is entitled to recover of them any thing further.

In cases where the remedy at law and in equity, is concur-
48

rent, the statute of limitations applies alike in both forums; it being considered as addressed to, and obligatory upon them.— In the case of a *strict* trust, and where a fraud has been practised, the statute will not operate *proprio vigore* in the first case, unless perhaps the trustee has placed himself in an antagonistical position to the *cestui que use*, or in the latter, until the fraud has been discovered.—Maury's adm'r v. Mason's adm'r, 8 Porter's Rep. 211; 2 Story's Eq. 735; Hovenden v. Lord Annesley, 2 Sch. & Lef. Rep. 607; Smith v. Clay, 3 Bro. Ch. Rep. 640; Bond v. Hopkins, 1 Sch. & Lef. Rep. 430; Kane v. Bloodgood, 7 Johns. Ch. Rep. 90; Mendlicot v. O'Donel, 1 B. & B. Rep. 166; Hawley v. Cramer, 4 Cow. Rep. 718; Farnam, adm'r v. Brooks, 9 Pick. Rep. 212; Codman v. Rogers, 10 Ibid. 119. But Courts of Equity recognize mere lapse of time, and the staleness of the demand, as a valid defence in cases where no statute of limitations directly governs the case. " In such cases," says Mr. Justice Story, " Courts of Equity act sometimes by analogy to the law; and sometimes act upon their own inherent doctrine of discouraging for the peace of society, antiquated demands, by refusing to interfere, where there has been gross laches in prosecuting rights, or long and unreasonable acquiescence in the assertion of adverse rights."— 2 Story's Eq. 736, and cases cited in note.

The 42 sec. of the act of 1806, "concerning wills and testaments," &c. gives the action of account to one joint administrator against another; and enacts further, that "any executor being a residuary legatee, may have an action of account against his co-executor, or co-executors, and recover his part of the estate, in the hands of such co-executor, or co-executors; and any other residuary legatee may have the like remedy against the executor; and any person having a legacy bequeathed in any last will and testament, may sue for and recover the same at common law.—Aik. Dig. 183. This statute *in totidem verbis*, gives the action of account to any residuary legatee, against the executor, and the difficulties in the prosecution of such an action, will not allow us to refuse to treat it as a legal remedy. If the principle we have stated in regard to cases in which Courts of Law and Equity exercise a concurrent jurisdiction, be applicable, then is the statute of limitations an available bar for the executors; for the commencement of an action of ac-

count, is limited to six years after the cause of it accrues.—— Aik. Dig. 270; and the proof in the record very satisfactorily shows, that the plaintiff attained his majority eight or nine years previous to the filing of his bill. In determining that the statute bars all remedy against the executors for an account and recovery of the plaintiff's residuary legacy, either by action at law, or bill in equity, we are not to be understood as intimating that the same length of time could be urged as a reason why a settlement should not be coerced by the Orphan's Court. What period would be sufficient to authorise the presumption that, a settlement had been made or dispensed with by the parties interested, out of Court, would in general, depend upon collateral and extrinsic circumstances, and consequently cannot be determined until the question arises in judgment.

But even supposing that the statute of limitations does not bar the plaintiff's suit, and we are inclined to think that the amount unaccounted for, is too inconsiderable to authorise a Court of Equity to entertain the case. Taking the account presented to the County Court by Person Davis, to be a correct statement of the estate of Wm Davis, so far as it came to the hands of the executors, and it appears that the sum of two hundred and eighty-nine dollars and forty three and three-fourth cents, have never been accounted for, by them. This account was exhibited in April, 1824. The complainant's distributive share being one thirty-sixth part of that sum, did not with interest added, at the time the bill was filed, amount to more than seventeen dollars and fifty cents. Now it has been considered by this Court, that the statutes regulating appeals from justices of the peace, and the mode of trial in the higher Court, secure to the parties all the justice and equity to which they are entitled ; especially where the amount in controversy does not exceed twenty dollars. And consequently it has been holden, that if in any such case, chancery will interfere, it must be where the amount in controversy exceeds twenty dollars.—Williams *et al.* v. Berry. *et al.* 3 Stew't & Porter's Rep. 284. In taking the account to show the *maximum* of the executor's indebtedness, we must not be understood as affirming it to be conclusive against them; for we are by no means sure that the answers of the defendants upon this point, which are responsive to

the bill; and especially when considered in connection with the depositions of some of the legatees, which are in the record, negative the idea that the executors have not fully accounted.

In respect to a tract of land not specifically bequeathed, and which Person Davis relinquished to the United States under one of the laws for the relief of purchasers of the public lands, it very satisfactorily appears, that it was purchased by Person Davis at the government sale of lands at Milledgeville, in 1818, who paid in cash one fourth of the purchase money ; that afterwards the testator became a purchaser from him of an undivided moiety, upon paying one half the sum, he had paid to the United States. This arrangement between Person Davis and the testator, was not evidenced by writing; and afterwards the latter stipulated with the former, that if he would hire his negroes, and allow him to live with him during life, he would relinquish to him his entire interest in the land. The contract was performed by Person Davis, and consummated by the death of the testator, while a member of his family. These facts do not show, that by the purchase from the government, Person Davis became a trustee of a moiety of the land for the testator; the latter made no previous agreement to become a joint purchaser, nor did he furnish any part of the purchase money; but it was only after Person Davis became the proprietor, that he acquired an interest with him. The statute of frauds under these circumstances, does not render ineffectual for all purposes, the last contract by which Person Davis was again to have the entire tract of land. Suppose the testator had filed his bill for the specific performance of the first contract by coercing Person Davis to execute the necessary evidence of title to an undivided moiety, would it not have been competent for the defendant to have resisted such a decree by showing that the testator, had agreed with him to relinquish his right to the land for a valuable consideration, which he was willing to perform? Even if such evidence was not admissible as the basis of a right, yet it would be sufficient, to induce a Court of Equity to refuse to be active by decreeing against it.—2 Story's Eq. 80-1. And if an action had been brought by the testator for money paid by him, or for which Person Davis sold the land, it would have availed the defendant to show the facts, as going to establish that the testator had parted with his legal right.

So, that in no view should the executors be held to account for this land as a part of the testator's estate.

2. The proof is entirely satisfactory, to show that all the slaves specifically bequeathed to the children of Sally Wood, were, when the will was made, and for years previously, and have continued ever since, in the possession of Joseph Wood, to whom they had been given by the testator.   Such is the evidence of several of the legatees, whose depositions are in the record, and who state, that the testator bequeathed to his other children, the slaves he had previously given them, for the purpose of manifesting that he was alike just and liberal to all.— The concessions made by Joseph Wood, in regard to these slaves, in order to effect an amicable adjustment with his children, cannot prejudice him; and even if admissible for any purpose, would be considered as gratuitous, over-balanced as they are by circumstances, and the positive statements of the witnesses. Equally ineffectual must be the evidence of several witnesses who testify, that about the time Joseph Wood and his children were endeavoring to settle, the former spoke of the slaves in question, as a part of the estate of William Davis, deceased; the conversations related by these witnesses, were expressed in such terms as one who was not very precise in the use of language, or watchful of his rights, might be expected to employ.

The competency of the executors as witnesses, is not explicitly brought to the view of the Court by the assignment of errors, and if it were, we do not think that the admission of their testimony taken after the bill was dismissed as to them, could affect the decree.   The statute of limitations operating as a bar in their favour, they could not be charged by the plaintiff, by a suit at law or in equity, for a *devastavit* or other cause:— *Again,* no objection was made to their evidence in the Court of Chancery, and on writ of error, it must be understood to have been admitted with the plaintiff's assent: *And lastly,* independent of their testimony, the proof in the cause is entirely sufficient to sustain the decree.

In neither of the points raised, is there any error, and the decree of the Court of Chancery is consequently affirmed with costs.