*W. Penn Clarke* and *H. B. Hendershott,* for appellant.

*J. C. Knapp* and *S. W. Summers,* for appellee.

— -- - ❖ ❖ ❖ — --—

## HUNT *v.* HUNT.

Section 1485 of the Code, directing an order concerning children after a divorce is decreed, the court in acting "as shall be right and proper," should observe the legal rights of the parents, the child and the community.

Where the child is of such age that it can, without injury, be withdrawn from maternal nursing, the father has legal right to its custody, society and service, and is legally liable for its supportand education.

A court should not assume the wardship of a child, unless the parent labors under a moral and natural disability which would disqualify him for the performance of his duties to the child.

The consent of the father that the mother might have the custody of the child for the time being, cannot deprive him of his superior right to the child, no more than such consent would not release him from his obligations to the child.

### *Appeal from Des Moines District Court.*

*Opinion by* WILLIAMS, C. J. At April term, 1853, John B. Hunt filed his petition in the district court of Des Moines county, praying that the court might make an order, giving him the care and custody of his minor child, Louise Hunt, who was then claimed and held in custody by Mary M. C. Hunt, formerly his wife, but who had, at a previous term of that court, obtained a decree of divorce from the bonds of matrimony contracted with him. The

Hunt *v.* Hunt.

court heard the application at April term, 1854. It was overruled, and the order, made at the previous term, relative to the custody of the child confirmed. Thereupon this appeal was taken.

A brief statement of the facts of this case, as presented by the record of the proceedings had upon the application of the appellee, Mary M. C. Hunt, for a divorce, is necessary, in order to a proper understanding of the matter involved by the present application.

At the October term, 1852, of the district court of Des Moines county, Mary M. C. Hunt filed her petition for a divorce from the bonds of matrimony, which had been contracted between her and the appellant, John B. Hunt.

The parties appeared for hearing, and the divorce was decreed, as prayed for. It was made to appear to the court, that the parties had three children. With the acquiescence of the parties, the court ordered that the two oldest, being sons, be committed to the care and custody of the father, and that Louise, the youngest child, should, until further order of the court be made, be consigned to the care and keeping of the mother. At that time, Louise was between three and four years old. Thus the matter stood until the making of this application.

The father, John B. Hunt, now claims that the child Louise be ordered into his care and custody, on the following grounds:

"1. That he has the paramount right to her.

2. The inability and moral unfitness of the mother to keep and maintain her.

3. The danger of the child contracting a malignant disease of the eyes, which prevails in the family of the mother."

It appears by the record of the proceedings of the application for the divorce, as well as those of the custody of the child, all of which, with the written opinion of the judge, are here duly certified, that the parties have been consid-

15*

ered as holding a respectable position in the community. The judge certifies in his opinion, " that the decree of the divorce was made on the ground of an obvious incompatibility in the tempers and dispositions of the parties, which made it necessary for their happiness and well being that they be separated; that the decree was made without more blame to the one party than the other." It also appears that the parties consented to the temporary disposal of the children, as made by the court.

The court below, in refusing to grant the prayer of the father, acted on the ground, that on the score of capability and moral fitness for the care and keeping of the child, the parties were about equal as to qualification; that the order first made was by consent, and in consideration of the feelings of the mother; in the absence of any exigency requiring the removal of the child from her, it should remain in her custody; that when the parties consented to the arrangement, which was made as to the children, they did not act under any legal disability; and that the title of the father was not paramount in law. The court further took the ground that the child was a ward in chancery, and therefore was properly subject to its discretionary power.

In adjudicating this case, we feel sensibly affected by the consideration of its importance to our state. The apparent facility with which divorces are to be obtained under the Code; the frequency of such applications; the rights and duties of parents in relation to their innocent, helpless and unfortunate offspring, and the community in which they live. The danger of a growing contempt for the sacredness and solemn responsibilities of the marriage contract, imperiously requires that the law should be so administered by our courts, that in addition to statutory facility, a greater, by construction, may not be afforded for the reckless and immoral to abrogate this important principle of the social compact. In the present dispute, rights and

interests of the most sacred character are involved, affecting the parents, the unfortunate infant and the public.

We deem it necessary to notice but one question as presented here. In considering it, the two other points will be, of course, disposed of without special adjudication, as separate propositions. Which has the paramount right to the possession of the person, the care and keeping of the child, Louise? The father or the mother?

On this subject, the provision of the Code is as follows:

" When a divorce is decreed, the court may make such order in relation to the children and property of the parties, and the maintenance of the wife, as shall be right and proper. Subsequent changes may be made by the court in these respects, when circumstances render them expedient."

This provision is general in its terms, so far as it relates to the disposal of the children, and the property, and the maintenance of the wife. The court is to make such order "as shall be right and proper." In the ascertainment of what is "right and proper," it is the duty of the court to observe the legal rights of the parents, the child, and the community. What these are, we will endeavor, briefly as possible, to state.

The law of England, the principle of which, so far as it has not been changed by our statutes is in force here, is "that the very being or legal existence of the woman is suspended during marriage, or at least is incorporated and consolidated into that of the husband." 1 Black. Com., 468.

The control of the child, follows as a consequence. 2 Denio, 478–9. The father has legal power over the child until it arrive at the age of twenty-one years. There can be no doubt of the paramount right of the father to the possession, care and control of his minor child, when the child—as this one is—is of such age that it can, without injury or violence to nature, be withdrawn from maternal nursing. But the right of the father to have its society,

filial affection and service, as well as to see to its health, education, &c., are not the only matters for consideration here.   When he is not under some disability, legal or other-wise, the law holds him responsible to the child; and in accordance with the principles of nature and sound morality, makes him answerable for the preservation of its health, and its support.   He is also under legal obligation to the community in which he resides, to maintain and support his child.   See Code of Iowa, title 12, chap. 48, art. 1, § 787 and to 798, inclusive.   By these provisions of the statute, the father is placed first in the order of legal responsibility for the protection, support and care of his children.   As he is thus held by the law, and it is presumed that natural affection for his offspring must dictate his duty towards it, it is but reasonable to conclude that, to discharge this high trust, which he holds by virtue of the ties of nature, and the obligations of law, he should have the special control, and direct supervision of the interests of the child. Besides, he is liable for the expense which may be necessary for the support and education of the child; and it is his right to see to the proper adjustment and disposal of his means for those purposes.

But, in the disposal of this matter, the court below acted with a view to the fact, that the child was properly "a ward in chancery," and therefore became subject to the sound discretionary power of the court.   It is true that such power is vested in the court.   But it will not be exercised except when necessary, from the peculiar circumstances of the case.   When it is made apparent to the court that the parent labors under a moral or natural disability, by which he is disqualified, or unable to peform the duties of the relation which he holds, naturally and legally, to the child, it certainly is competent for the proper tribunals to assume and exercise such wardship.   This, however, will not be done, when no such disability exists. Such action by the court would be in derogation of the paternal rights and duties.   It would tend to render the

duties of the court onerous; and whilst it would, in many cases, release reckless parents from one of the sacred bonds by which they are held to social duty; in others it would rend assunder the ties of natural affection, by which life's bitterest draught may be made endurable.

What are the facts of this case, as certified by the district judge of record here? It is expressly stated that the father and mother are both capable and able to take charge of the child, and to support it. The child is now about five years old, and therefore may be separated from the mother without doing violence to it, on the score of natural support and comfort. Such being the facts, we do not see anything to justify the application of this principle of wardship in this case. The right of the father to the possession and control of the person of his minor child, when his disability is not established, is paramount. See *Wood* v. *Wood*, 3 Ala., 756; *Jennison* v. *Graves*, 2 Blackf., 441; *Bell* v. *Hollenbeck*, Wright, 751. In England, the courts have observed great caution in reference to the rights and duties of fathers in relation to their infant children. In the case of *Rex* v. *De Manneville*, 5 East., 221, the court refused to deny the right of the father to the possession of his child, though an infant at the breast of its mother, there being no ground to impute any motive to the father which would be injurious to the child. The case of *The People* v. *Mercein*, 3 Hill's Reports, 399, fully sustains this doctrine. See the opinion of the court, pages 408 and 409.

But the decision of the district court in this case, was made, also, upon the ground that when the decree of the divorce in that court was entered, the parties were present, and in the presence of the court consented to the order which was then made, giving the custody of the infant, Louise, to the mother; and therefore when this application was heard, the judge "felt bound to take cognizance" of the fact of consent, and for this reason confirmed the original order.

Hunt v. Hunt.

This cannot change and defeat the legal right of the father to the child, so as to bar him from reasserting it, and claiming benefit of it, upon the application. If the father could, by consent on his part, transfer the legal obligation, under which he stood, in relation to his child, to the mother, and thus by so doing, release himself from liabilities which result from the marriage contract, still the order which the court had previously made, in the case of the child, was, as appears by the record, only temporary, leaving the matter open for discretionary action in the future. It was, therefore, no finality, but upon this application, is properly examinable *ab initio*, and he can there revoke such consent upon a proper showing. But could he, by such consent, or any agreement, so dispose of his child, change his relation to it, and discharge himself of his obligations?

In consideration of the rights and duties of the father in relation to his child, he could not. The case here before cited of *The People* v. *Mercein*, 3 Hill's, R. 411; we think fully recognizes this principle. Judge Brunson there, in addition to what is held to be law on this point by Judge Cowan, says : " The opinion of this court has been repeatedly expressed that, by the law of the land, the claims of the father are superior to those of the mother." He also refers to a former opinion, sustaining the same doctrine, delivered by him in that controversy, in 25 Wend. R., 72, 83. This doctrine is maintained by numerous decisions of courts of the highest authority in this country. *Commonwealth* v. *Nutt*, 1 Browne, 143 ; 2 Hill, S. C., 363. *Commonwealth* v. *Murray*, 4 Binney R., 487 ; *Dedham* v. *Natick*, 16 Mass., 135, 140 ; *Nightingale* v. *Withington*, 15 ib., 272, 274.

These cases, although some of them involve other questions, all recognize the principle we here maintain ; and establish the superior right of the father. We are aware that in this, our day, the spirit of progress is abroad in the land, but, whilst we would not obstruct its onward career to triumph over error and oppression, we think that it is well to

Hunt *v.* Hunt.

observe and maintain those great and cardinal principles upon which the integrity of the social compact must ever depend. The just appreciation of the rights and duties of the marriage contract, and its incidents, is essential to the existence of civil and christian society.

We fully coincide with the learned judge when, concluding his opinion in the case of *The People* v. *Mercein,* 3 Hill, 423, he says " that human laws cannot be very far out of the way, when they are in accordance with the law of God."

The order of the court below is reversed, and ordered that the child be delivered to John B. Hunt, the father.

Decree reversed.

*M. D. Browning,* for appellant.

*D. Rorer,* for appellee.