Dubovy et al

*vs.*

Woolf et al.

Cumberland.    Opinion September 4, 1928.

*Hinckley, Hinckley & Shesong,*
*Clarence W. Peabody,* for complainants.
*Jacob H. Berman,*
*Harry E. Nixon,* for respondents.

Sitting: Wilson, C. J., Philbrook, Dunn, Bassett, Pattangall, JJ.

Bassett, J.   This is a bill in equity brought by the vendee of real estate to set aside the conveyance because of fraudulent representations of the vendor.   The sitting Justice sustained the bill and the case comes before this court on appeal from his decree setting aside the conveyance and ordering the parties to do certain things necessary to restore them to their original positions.

The defendant, Joseph R. Woolf, owning, subject to mortgages aggregating $6,100, a double tenement house and lot on Washington Avenue in Portland, placed it in the hands of real estate agents for sale.   The plaintiff, Leo Dubovy, through the instrumentality of a real estate broker, with whom the property was listed, visited the premises with the broker and the defendants, Mr. and Mrs. Woolf.   The upstairs tenement was closed and could not be seen on account of the absence of the tenant.   Upon inquiry, made to Mrs. Woolf, who was acting as agent for her husband, she informed Mr. Dubovy that the tenement upstairs was similar to the tenement downstairs.   The justice found that from her statements Mr. Dubovy was justified in understanding that the two tenements were similar in construction and condition.

Immediately following the visit to the house and the statements of Mrs. Woolf, Mr. Dubovy entered into a written contract with Mr. Woolf for the purchase of the property for $7,500, assuming the mortgages thereon, giving a third mortgage on it for, as finally determined, $400 and a second mortgage for $1,250 on another house and lot on Grant Avenue owned by Mr. Dubovy.

Immediately after the execution of the sale and of the required deed and mortgages, the plaintiffs, Mr. and Mrs. Dubovy, visited the premises to take possession and then for the first time discovered and learned as alleged that the upstairs tenement was not similar to the downstairs tenement in construction and condition but was out of repair, the ceilings in certain rooms being broken and fallen down, the plaster on walls of certain rooms cracked and the floor of the front room being of soft wood and without hardwood border like the room beneath.

Thereupon the plaintiffs without delay notified the defendants that the property had been misrepresented to them and they would not abide by the sale and, expressing a willingness to reconvey to Mr. Woolf the property, demanded a return of the consideration paid.

The sitting justice found: "Considerable evidence was offered as to the actual condition of the upstairs rent, and while an employee of the defendant Woolf testified that he repaired ceilings and walls at an expense of $13, in the light of common knowledge I find that the defects which appear from the evidence to have existed could not have been properly remedied for a price any where near as small as $13. If $13 were the cost of the repairs made, it is fair to infer the repairs were most superficial and could not have restored the property to the condition in which Mrs. Woolf represented it was at the time she stated its condition to Mr. Dubovy. Furthermore, a hardwood border, under present cost of labor and material, would cost a somewhat substantial sum and its inclusion would be necessary to permit the upstairs rent to conform in construction with the one below. While these defects are not substantial in value compared to the purchase price of the house, they materially effect the value of the property.

"It is clear that Mrs. Woolf made the representations either knowing them to be untrue, or without knowledge as to whether they were true or not. They were, in fact, untrue and in equity constitute a fraud upon the plaintiffs.

"As to the materiality of the defects, I think it follows the rule stated by Mr. Pomeroy in Section 898 of his work. 'If any pecuniary loss is shown to have resulted the court will not inquire into the extent of the injury. It is sufficient if the party misled has

been very slightly prejudiced, if the amount is at all appreciable.' "

The justice found that the defendants made an affirmative statement to Mr. Dubovy, in effect that the two tenements were similar in construction and condition, that the statement was not true, that the defendants either knew it to be untrue or made it without knowing whether or not it was true, and that Mr. Dubovy acted in reliance upon it. These elements essential and sufficient in equity to establish fraudulent misrepresentation, *Braley* v. *Powers*, 92 Me., 203, 209; *Richards* v. *Foss*, 126 Me., 413, 415; Pomeroy's Eq. Jur., 4th Ed., Sec. 876 *et seq.*, were fully supported by the evidence and the defendants raise no point with reference to them.

But another element is essential, the statement or representation must be material; that is, it must be an inducement to action and as such relied upon, and it must also be so material to the interests of the party relying upon and acting upon it that its falsity causes him some pecuniary loss or injury. Pomeroy's Eq. Jur., Sec. 898 and note a; Story's Equity Jur., 14th Ed., Sec. 289.

The defendants base their appeal on a failure to establish this element, contending that there was only evidence that the injury was so trivial that equity will not take jurisdiction, that the conclusion of the sitting justice of larger injury was based not on evidence but on "common knowledge" beyond the proper limits of which it is apparent the justice went in his findings, that the rule relied upon by the justice is not the rule under the decisions of this court, and consequently that the finding of fraudulent misrepresentation was incorrect as a matter of law.

First, as to the amount of the injury. The defendants claim that the injury was only the amount necessary to repair the plastering and that was $15. The evidence as to the actual condition of the ceilings and walls of the upstairs tenement was conflicting. An employee of the defendant testified that he repaired all the plastering and that between thirteen and fifteen dollars would have paid for it. There was no evidence of the amount of time taken to do it or the price of such labor. But the court as a matter of common knowledge knows in a general way the price of labor, 23 Corp. Jr., 150; *Bell* v. *Barnet*, 2 *J. J. Marsh*, 516 (Ky.); Opinion of the Justices, 231 Mass., 603, 610. From such

knowledge and his conclusion as to the actual condition of the walls and ceilings, the justice drew the further conclusion that if only $15 were required, the work done was superficial and repairs to put the plastering of the upper tenement into the same condition as the lower could not have been made "for a price anywhere near as small as $13." This conclusion was logically and legally justified.

But the defendants do not refer to the floor of the front or living room which the justice found would require a hardwood border to correspond with the living room below. No evidence was presented as to the size of the room or of the border or of its cost. But from the evidence as it was, the finding that such a border would cost "a substantial sum" was supported by it.

The conclusion as a matter of fact, that the defects would require some substantial pecuniary expense to repair, was supported by the evidence. The actual total or approximate total was not in evidence and was not found.

Second, the defendants contend that the injury was "trivial" and rely upon *Woodbury* v. *Portland Marine Society*, 90 Me., 18, in which an injunction was sought to prevent in part the defendant corporation from paying $15 — the same amount claimed to be the maximum damage in the instant case — as a charitable contribution. The bill was dismissed, Chief Justice Peters declaring in the opinion that "Equity does not stoop to pick up pins."

That decision was in accord with other decisions, based upon the principle that equity will not take jurisdiction of a suit, the subject matter of which is too trivial to justify it in so doing. A common phrase was that such suit is "unworthy of the dignity of the Court." But the principle is founded on reason and policy. It was designed to prevent expensive and mischievous litigation about trifling matters which in consequence of the insignificance of the amount involved would do the parties themselves more harm than good and might occasion injurious delay to other suitors. Story on Eq. Plead., 10th Ed., Sec. 500; *Allen* v. *Demarest*, 41 N. J. Eq. 162, 2 Atl., 655.

In England the rule in chancery is that a suit involving a pecuniary value of less than ten pounds and not founded on fraud or brought to establish a right of a permanent nature must be dis-

missed. By the ordinances of Lord Bacon it was declared that all suits under the value of £10 are regularly to be dismissed and this rule was declared in 1884, *Westbury on Severn R. S. Authority* v. *Meredith*, 30 Chan. Div., 387, to be still in force and not changed by the Judicature Act.

Bacon's rule, with the amount of $50 as the equivalent of £10, has been declared by Chancellors Kent in *Moore* v. *Lyttle*, 4 Johns. Chan., 183, and Green in *Swedesborough Church* v. *Shivers*, 16 N. J. Eq., 453, to have the imposing character of an original constitutional ordinance. It has in various jurisdictions been decided to be a part of the law marking and defining the boundaries of the jurisdiction of the court of equity. *Allen* v. *Demarest*, supra; *Wood* v. *Wood*, 3 Ala., 756; *Carr* v. *Inglehart*, 3 Ohio State, 457.

The rule has been rigidly adhered to. Where the amount in dispute was under $50 the suit was dismissed. *Fullerton* v. *Jackson*, 5 Johns. Chan., 276; *Mitchell* v. *Tighe*, Hopk. 119; *Douw* v. *Shelden*, 2 Paige, 323. Where just $50, it was retained. *Vrendenburgh* v. *Johnson*, Hopk., 112.

The amount was changed by statute to $100 in New York. *Church* v. *Ide*, Clarke Chan., 494 (N. Y., 1841); *Newell* v. *Burbank*, 4 Edw. Chan., 536 (1844), and in Alabama, *Wood* v. *Wood*, supra (Ala., 1842). By statute the amount was originally fixed at $50 in Tennessee, *McNew* v. *Tobey*, 6 Humph., 27 (1847), and at $100 in Michigan, *Steinbach* v. *Hill*, 25 Mich., 78 (1872); *Wallace* v. *Sortor*, 52 Mich., 159.

The rule of Massachusetts is laid down by Chief Justice Shaw in *Cummings* v. *Barrett*, 10 Cush., 190. "The rule de minimis is applied in equity with reasonable strictness. In New York the rule is that a suit in equity will not be maintained when the amount is less than one hundred dollars. That, however, we believe is fixed by statute. No such statute exists here but a similar principle is applied." See also *Smith* v. *Williams*, 116 Mass., 510; *Chapman* v. *Banker & Tradesman Pub. Co.*, 128 Mass., 478; *Gale* v. *Nickerson*, 151 Mass., 432; *Giragosian* v. *Chutjian*, 194 Mass., 504, 506.

In New Jersey, *Allen* v. *Demarest* (1886), supra, the amount of $50 was strictly adhered to although the purchasing power of

that sum was admittedly much less than at the time of the adoption of the ordinance, because it is the duty of the courts to administer and enforce laws not to ordain and establish them.

*Woodbury* v. *Portland Marine Society*, supra, was within the rule of £10 or $50. We think that a finding in the instant case that the injury was at least $50 was properly and legally inferable from the evidence, *Irwin* v. *Irwin*, 110 S. W., 1101 (Texas), and therefore that the rule does not apply.

But it was early held that the rule did not apply to cases of fraud. Anon. Bunbury 17 (1717) note, "Where there is a fraud or it is a complicated matter the bill will be retained though the sum be never so small." *Hamilton* v. *Johnson*, Vern. & S., 394 (1787), "But where the object of the bill is to be relieved against a fraudulent demand, fraud is the ground of the court's proceeding and it is no matter how small the sum is."

Well established exceptions therefore are bills founded on fraud or brought to establish a right of a permanent nature. *Allen* v. *Demarest*, supra; *Barnet* v. *Woods*, 2 Jones Eq., 198 (1856); *Yantis* v. *Burdett*, 3 Mo. App., 457 (1834); *Vrendenburgh* v. *Johnson*, Hopk., 112 (1824); Story on Eq. Plead., 10th Ed., Sec. 500. This case is an exception.

Third, as to the amount of pecuniary loss or injury which must be shown. This is a proceeding to rescind a contract of sale and recover the considerations paid. A distinction has been noted between cases where the misrepresentations are relied upon as a defense by the injured party (as in a bill to enforce specific performance, *Cadman* v. *Horner*, 18 Vos. 10; 11 Rev. Rep. 137), and where relied upon as a basis of action by the injured party to recover, as here.

In the former case, "if the false statement applies to a material fact the law implies that the defrauded party has suffered an injury sufficient to defeat a recovery. By showing the misstatement was a material one relative to the subject matter of the contract is proof that damages, in some degree, have been sustained by the defrauded party but he is not called upon to give direct proof of the nature and extent of his damages. Where a party is seeking affirmative relief upon the ground of fraud whether it be legal or equitable then he is called upon to prove that he has sustained

damages in some tangible amount." *Stewart* v. *Lester*, 1 N. Y. S., 699; 14 Am. & Eng. Ann. Cas., Note p. 262.

In an action to recover purchase price of stock, *Jakway* v. *Proudfit*, 105 N. W., 1039 (Neb., 1906), the court, after quoting the rule from Pomeroy relied upon by the sitting justice, says, "While there is some diversity of opinion in the adjudged cases as to the nature of the damages which will warrant a rescission of a contract, the very great weight of authority, however, is in line with the text writers above quoted on the proposition that it must be an actual pecuniary damage as distinguished from a nominal or theoretical injury. The rule in this state seems to be in harmony with the strong current of authority on this question. - - - - False representations as the basis of an action whether for damages or for the rescission of a contract are such only as in some manner actually misled the complaining party to his damage." The decision was reaffirmed in 109 N. W., 388.

In *Wainscott v. Occidental etc. Association*, 33 Pac., 88 (Cal., 1893), bill to rescind a purchase of land, the decision quotes the rule from Pomeroy. It further says, "He who would recover damages in a court of law must set forth in an orderly manner the facts showing his right to recover and the amount to which he is entitled to the exclusion of every presumption to the contrary. In such an action the damages are the essential thing. In an action to rescind upon the ground of fraud, the fraud is the essential thing; and while it must be coupled with loss, injury, damage, the precise amount of damage is of secondary importance." This principle and the rule of Pomeroy were affirmed in *Spreckels* v. *Gorrill*, 92 Pac., 1011 (Cal., 1907).

The rule of Pomeroy is quoted with approval in *Fouse* v. *Shelley*, 63 S. E., 208 (W. Va., 1908), a bill to rescind a contract for partnership because of misrepresentations.

In *Pennington* v. *Roberg*, 142 N. W., 710 (Minn., 1913), where a farm was represented to have 1600 apple trees with 1300 bearing and there were in fact 1255 trees and 1130 bearing, and the defendant in a bill to rescind contended the difference in number of trees was not sufficient to base a rescission, the court affirmed the finding of the judge below that the plaintiff relied upon such representations and was in part induced thereby to purchase and that

the contract be rescinded. "In considering these findings we must bear in mind the well established practice to refrain from disturbing a finding of the trial court unless palpably against the weight of evidence."

The adjudged cases appear to be in accord with the rule of Pomeroy. We have not found any contrary to it. While the rule has not before been in issue in our court as in the instant case, the decisions of the court have been in accord with it. We do not construe it as meaning that the court will not, in an action to rescind, inquire into the extent of the injury. An important part of the rule is a condition, "if the party is misled." The alleged injury might be so small that it could not reasonably be held that the party did rely upon a representation which if untrue would have such trivial results. It might be held he could not reasonably have been so misled. But if the evidence supports the conclusion that the party was misled, then the extent of the prejudice or loss, if there is appreciable pecuniary damage, will not be inquired into. In such case fraud and damage have both been shown as both must be. With this construction the rule is approved by this court.

The justice found that the amount necessary to restore the condition of the upper tenement was not large in proportion to the purchase price of the house, but the defects materially affected the value of the property. There was evidence to support that finding. He found that the element of materiality of the misrepresentation was established. His conclusion is legally sound. The entry must therefore be

*Appeal dismissed.*