ALBERT LORANDO *vs.* JOSEPH C. GETHRO & another.

Suffolk.    March 28, 1917 — September 13, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Insurance,* Liability.    *Statute,* Construction.    *Constitutional Law.    Words,* "Loss or damage," "Loss," "Occur," "Absolute."

Under the provision in St. 1914, c. 464, regulating the payment of losses under contracts for casualty insurance, that, "whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage, or death, occasioned by said casualty," a "loss occurs on account of a casualty," not when the casualty happens, but when the damages resulting from that casualty have been fixed by the judgment of a court.

In further interpretation of the same clause it was *held* that the liability of the insurance company becomes "absolute" in the sense that the amount of the loss thereafter shall not be open to dispute, and the clause does not prohibit any ground of defence that ordinarily would be open to the insurer in an action brought against it by the insured on the policy.

St. 1914, c. 464, which in substance prohibits the insertion in a contract of casualty insurance made after that statute took effect of a condition that the insured must pay the amount of the loss before liability attaches to the insurer, and which

gives to a person injured by fault of the insured in a manner covered by the policy a beneficial interest in the proceeds of the policy and permits him, after he has obtained a judgment against the insured, to maintain a suit in equity in his own name to procure the application of the insurance money to the satisfaction of his judgment, is constitutional.

BILL IN EQUITY, filed in the Supreme Judicial Court on October 30, 1916, against Joseph C. Gethro of Norwood and the New England Equitable Insurance Company, a corporation organized under the laws of this Commonwealth engaged in the business of casualty insurance, alleging that on June 23, 1914, the defendant insurance company entered into a contract with the defendant Gethro by which it insured him in the sum of $5,000 against loss or damage on account of bodily injury or death by accident of any person for which he would be responsible by reason of the operation of a motor car of which he was the owner, that on July 4, 1914, the plaintiff received severe bodily injury by reason of the negligence of the defendant Gethro in the operation of his motor car and brought an action against that defendant in which he recovered judgment against him in the sum of $6,862.33 damages and $78.40 costs, that this judgment was not satisfied in whole or in part by the defendant Gethro out of his insurance for the sum of $5,000 with the defendant insurance company or otherwise, and that under St. 1914, c. 464, the plaintiff was entitled to have the insurance money applied to the satisfaction of his judgment. The prayer of the bill was that the defendant insurance company might be ordered to pay to the plaintiff the sum of $5,000 so far as might be necessary for the satisfaction of the plaintiff's judgment against the defendant Gethro.

The defendants demurred to the bill, assigning as causes of demurrer the following:

"1. That the statute under which recovery from the defendants or either of them is sought is unconstitutional, and therefore the plaintiff sets up no cause of action cognizable in law or equity.

"2. That the matters set forth in the bill of complaint are insufficient in law to enable the plaintiff to maintain his action, either in law or in equity."

The case was heard upon the demurrer by *Pierce*, J., who ordered that the demurrer be overruled and, at the request of the defendants, reported his ruling for determination by the full court,

such orders or decrees to be entered as equity and justice might require.

St. 1914, c. 464, is entitled "An Act to regulate the payment of losses under contracts for casualty insurance," and is as follows:

"Section 1. In respect to every contract of insurance made between an insurance company and any person, firm or corporation, by which such person, firm or corporation is insured against loss or damage on account of the bodily injury or death by accident of any person, for which loss or damage such person, firm or corporation is responsible, whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage, or death, occasioned by said casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void.

"Section 2. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death, if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

The act was approved on May 2, 1914.

*R. H. Willard & W. H. Taylor,* for the defendants, submitted a brief.

*A. T. Smith,* for the plaintiff.

RUGG, C. J. This is a suit in equity under St. 1914, c. 464, brought by one who has recovered judgment against the principal defendant for bodily injuries caused by his negligence and against an insurance company which had insured the principal

defendant against loss or damage arising from such cause by a policy dated subsequent to the time when the statute became effective. The defendants demurred to the bill on the ground that the statute is unconstitutional. The statute is printed on page 183.

The phraseology of this statute is somewhat involved. The words "loss or damage" are found four times in § 1 and twice in § 2. The first time these words occur, manifestly they refer to the subject matter of the contract of insurance, namely, the loss or damage which the assured ultimately may suffer through paying or being liable to pay the amount recovered for the bodily injuries or death by accident caused by him to others. The second, third and fourth times these words are used they refer equally plainly to the "bodily injury or death by accident of any person" for which the insured legally may be responsible. The tautological addition of the words "or death" in connection with their use the third time does not affect their sense. Clearly a like meaning attaches to them at their first occurrence in § 2. At their second appearance in that section, they refer to the loss or damage suffered by the insured, and this is so notwithstanding the circumstance that they are preceded immediately by the word "said," which at first would seem to make them synonymous with the first "loss or damage" in that section. The word "loss" alone without other connected or modifying word occurs twice in the first section. It refers in each instance to the detriment caused to the insured, for which he is to be indemnified by the insurer.

Indubitably "loss" as thus used does not refer to the event out of which as a consequence the pecuniary liability of the insured flows. A "loss occurs on account of a casualty" as the words here are used, not when the casualty happens, but when the damages resulting from that casualty have been fixed in any legal way. "Loss" in this connection means the actual financial obligation of the insured, measured in money, in respect of the casualty against which he is insured. Ordinarily in cases of dispute that loss can be ascertained only by the judgment of a court. It can "occur" in the sense of the statute only when so ascertained.

The clause following, namely, "the liability of the insurance company shall become absolute," in its context, means only that the liability of the insurance company, so far as concerns the amount of the loss, shall not thereafter be open to dispute. The insurer's lia-

bility is absolute only in respect of the amount of the loss and not in other respects.

This clause thus interpreted is or might be of great force in cases of bankruptcy or financial irresponsibility of the insured. It fixes the amount of loss for which the insured has been found liable, not exceeding the extent of the insurance, rather than the financial loss actually sustained by him through payment of money damages, as the measure of the insurer's liability. In many conceivable instances this distinction might be exceedingly important. Perhaps the clause thus interpreted adds little or nothing to what might be implied from the ordinary contract of insurance between abundantly solvent parties. But that matter is not left hereafter to be the subject of contract between the parties. It is definitely established as the relation imposed by law upon the parties. Whatever may be their degree of financial responsibility, the clause does not mean that the other valid conditions of a contract of casualty insurance are abrogated. Whatever conditions are imposed by that contract, whether as to written notice by the insured to the insurer of any accident and claim, the delivery to the insurer of summons in case of action instituted, as to time of bringing action on the policy, or otherwise, are left in full force, unaffected by this clause.

This clause also leaves open for determination the question whether the policy of insurance covers the casualty in issue, or whether otherwise the insurer is liable to the assured. It does not prohibit any ground of defence which ordinarily would be open to an insurer in an action brought against it by the insured on the policy. It forecloses only the ground that the amount of the loss shall not be open to dispute. As to that subject it provides that the "loss," as that word is used in contracts of casualty insurance, shall mean loss as we have defined it, and that its meaning in that respect shall not be modified, affected or limited by stipulations between the parties.

The contention is untenable that the words "the liability of the insurance company shall become absolute" mean that the insurance company thereafter shall have no ground of defence open to it. It is almost inconceivable that the Legislature would attempt to make an insurance company unconditionally liable to pay for a loss without giving it an opportunity to require any notices of

loss or of actions at law and thus to ascertain the circumstances out of which the loss arises and its nature and extent at or near the time when the event occurs, or to make reasonable conditions as to the establishment of its liability under the insurance contract. Such an intent on the part of the General Court could not be inferred in the absence of unequivocal words expressing that purpose so clearly as to be beyond discussion. A statute of such import would present a constitutional question quite different from those now at the bar. It would require unmistakable words to warrant the supposition that the Legislature had pressed its power to such an extreme. The instant statute conveys no such meaning. All its words may be given an effective and natural interpretation without reaching so unusual a result.

The statute then provides that the payment of the "loss" as thus defined by the insurer to the insured shall not depend upon the satisfaction by the latter of final judgment against him founded on the casualty against which he was insured. The meaning of this clause is plain. As matter of construction its effect is to nullify "Condition 7" of the present policy of insurance, namely, that "No action shall lie against the Company to recover for any loss . . . unless . . . for loss or expense actually sustained and paid in money by the Assured in satisfaction of a final judgment." Its design obviously is to prevent the enforcement of such and like conditions, which were held valid in *Connolly* v. *Bolster*, 187 Mass. 266, and in *Davison* v. *Maryland Casualty Co.* 197 Mass. 167, 170, and which, unless prohibited by law, indisputably are binding terms of a contract. By the express provision of this statute such conditions are to be of no effect.

The final sentence of § 1 prohibits the cancellation or annulment of a policy of casualty insurance by agreement between the insured and the insurer after a casualty has occurred, for which the insured is liable, and against the damage accruing from which to him he is insured by the policy, without the assent of the person injured by the casualty. It is not a dominant provision, but is ancillary to the main purpose of the act.

The second section establishes a temporary lien in favor of one, who has put the damages, resulting to him from the casualty insured against, in the form of a judgment, on the amount due under the policy as between the insured and the insurer. It also affords

him the usual remedies of a judgment creditor, *Rioux* v. *Cronin*, 222 Mass. 131, or the special equitable attachment provided by R. L. c. 159, § 3, cl. 7.

The Legislature has power under the Constitution to enact the statute as thus interpreted. Said Chief Justice Knowlton in *New York Life Ins. Co.* v. *Hardison*, 199 Mass. 190, 198, "The Legislature has large powers for the regulation of the business of insurance. It may act under the police power for the protection of the public, or it may act as the creator and controller of corporations, domestic and foreign, which are subject to this power. This has been decided in many cases in this Commonwealth and elsewhere." A number of decisions there are collected. It was held in *Considine* v. *Metropolitan Life Ins. Co.* 165 Mass. 462, 466, that there is "no doubt of the constitutional power of the Legislature to prescribe the form of a policy of insurance." To the same effect in substance are *Knights Templars' & Masons' Life Indemnity Co.* v. *Jarman*, 187 U. S. 197, 204, and *Whitfield* v. *Aetna Life Ins. Co.* 205 U. S. 489, 495.

The instant statute has for its chief object simply a regulation as to the form of a policy of insurance. It prohibits in substance the insertion in any contract for casualty insurance of a condition that the insured must actually pay the loss before liability attaches to the insurer. With that single exception and its accompanying incidents the insurer and the insured are free to make such contracts as they choose, and the scope and validity of such contracts are left as before, unaffected by this statute.

A further important feature of the statute is to give to the person injured by the conduct, against loss from which the assured is insured by his policy of insurance, a certain beneficial interest in the proceeds of that policy. It does not enlarge nor modify in any respect the substantial liability created by the contract of insurance. It merely enables the person suffering the initial damages, out of which grows the loss to the insured, to acquire a lien against the loss and the right to damages or indemnity arising under the policy and to enforce it in his own name. In a constitutional sense this phase of the statute does not differ from many others which have been upheld. When a statute is in force, giving special force and effect to a particular contract, parties who enter into such a contract are held to contemplate and assent to the

force and effect attributed to it by such statute. The instant statute is similar in this aspect to St. 1907, c. 576, § 73, whereby there is given to a beneficiary under life insurance policies a vested interest and right of direct action on the contract of insurance against the insurer, though no party to it, *Dean* v. *American Legion of Honor*, 156 Mass. 435, *Blinn* v. *Dame*, 207 Mass. 159, 163, to St. 1911, c. 751, Part III, § 17, whereby the employee of a subcontractor of a subscriber is entitled to the rights of an employee of the subscriber although having no relations to him, *White* v. *George A. Fuller Co.* 226 Mass. 1, and to the numerous lien statutes whereby rights are given to laborers and to materialmen who have no contractual or other direct relation to the landowner against whom they are given a right of action. *Parker* v. *Bell*, 7 Gray, 429, *Bowen* v. *Phinney*, 162 Mass. 593.

In its practical operation in this respect the statute is not altogether unlike the enforcement of an agreement or covenant merely personal in its nature, not purporting to bind assignees and not running with land, by and against those not parties thereto by means of the doctrine of equitable restrictions. *Whitney* v. *Union Railway*, 11 Gray, 359, 363. *Bailey* v. *Agawam National Bank*, 190 Mass. 20. *Childs* v. *Boston & Maine Railroad*, 213 Mass. 91.

No constitutional right of the insurer or of the insured is violated by enabling one, who has recovered a judgment against the latter on a liability, against loss from which he is protected by contract with the insurer, to bring a suit in his own name. Such a judgment creditor has a direct interest in the performance of the undertakings in the contract of casualty insurance. It may be that the only source from which his debtor can secure money enough to pay his judgment will be from the proceeds of that insurance contract. See *German Alliance Ins. Co.* v. *Home Water Supply Co.* 226 U. S. 220, 230.

The subject of insurance is of such general public interest as to be under the control of the Legislature within rational limits. When a statute has been enacted governing any particular part of the field of insurance, the parties entering into contracts respecting that field are presumed to do so with reference to the obligations and terms established by that statute. Although previous to the passage of the statute now attacked, a contract of insurance like that here in question would have been valid and enforceable under

*Connolly* v. *Bolster, ubi supra,* yet now the insurer, by issuing a policy of casualty insurance, impliedly agrees to be governed by the terms of the statute and to consent that his obligation to the insured shall, to the extent of a judgment recovered by a third person against the assured for a casualty covered by the insurance, be hypothecated for the benefit of such third person.

The statute is reasonable in its purpose and effect. Its obvious design is to afford to the insured of modest resources the direct benefit of his insurance. It well might be a practical impossibility for an insured who has complied with every other term of his contract and has paid all premiums demanded by the insurer, first to pay the loss and damage for which he was liable and against which he was insured. The man without capital or credit might be powerless to meet his obligation and put himself in position to recover against the insurer. The man of slender resources or doing a considerable business on small capital might be forced into bankruptcy, and get little or no benefit from the insurance for which he had paid. The persons injured by accidents, for which such classes of persons insured might be liable, would be in effect remediless as to practical results for the damages sustained by them. It well might be thought by the Legislature a sound public policy that casualty insurance should become an effective instrumentality for both the insured and the injured, and not be a snare to the insured and a barren hope to the injured. If the Legislature believed this, it reasonably might decide to frame the terms of policies of casualty insurance and to provide means for their enforcement, to the end that these results might be avoided, and to declare that policies lacking these requisites should not be written, or if written should be ineffective as to these terms.

When confessedly the general subject of insurance is under legislative control, there is a broad latitude of choice as to the means which may be employed to reach results thought to be desirable.

The principle here declared and the decisions upon which it rests do not derogate in any degree from the right of freedom of reasonable contract and the right to acquire and possess property which are among the essential guarantees of our Constitution. They do not infringe upon the principles declared in numerous cases sustaining such rights illustrated by *Commonwealth* v. *Perry,*

155 Mass. 117, and *Bogni* v. *Perotti,* 224 Mass. 152, and the cases there collected.

Of course the Legislature cannot create a debt out of hand from one person to another without the express or implied consent of the person to be charged. But it is a very different thing to enact a statute to take effect as to contracts thereafter made. *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1.

Perhaps there are decisions upon kindred subjects, the grounds for which are equally applicable to the case at bar, and the principles of which rationally extended would require the conclusion that this statute violates the constitutional right of freedom of contract. *Rittenhouse & Embree Co.* v. *Warren Construction Co.* 264 Ill. 619. *Young* v. *Lion Hardware Co.* 55 Ohio St. 423. But these adjudications seem to restrict unduly the power of the Legislature to pass all manner of reasonable and wholesome laws and to be contrary to the great weight of authority. See *Jones* v. *Great Southern Fireproof Hotel Co.* 30 C. C. A. 108, 115, 127, for an exhaustive review of cases where "reasons . . . are cogently stated in the able and elaborate opinion of Judge Lurton," which were adopted by reference without repetition in *Great Southern Fire Proof Hotel Co.* v. *Jones,* 193 U. S. 532, 550.

No discussion is required to demonstrate that the Legislature may establish appropriate forms of relief for existing rights or those rightly created, and that it may provide equitable procedure for the enforcement or protection of such rights. *Stockbridge* v. *Mixer,* 215 Mass. 415. *Gould's Case,* 215 Mass. 480.

The instant statute is a declaration of public policy by the General Court respecting one aspect of casualty insurance. It is a declaration as to a subject within its general power of regulation. It governs contracts made after it took effect. It is not retroactive. Its terms are reasonable and violate no right secured by the Constitution. It is well within the principle of numerous decisions where statutes more or less interfering with the freedom of contract have been upheld. *Mutual Loan Co.* v. *Martell,* 200 Mass. 482, affirmed in 222 U. S. 225. *Dewey* v. *Richardson,* 206 Mass. 430. *Commonwealth* v. *Strauss,* 191 Mass. 545. *Commonwealth* v. *Libbey,* 216 Mass. 356. *John P. Squire & Co.* v. *Tellier,* 185 Mass. 18.

*Order overruling demurrer affirmed.*