ROLAND J. CAMIRE
*vs.*
COMMERCIAL INSURANCE CO.

Androscoggin. Opinion, March 16, 1964.

*Grover G. Alexander*, for Plaintiff.

*Frederick G. Taintor*, for Defendant.

SITTING: WILLIAMSON, C. J., TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ. WEBBER, J., did not sit.

SULLIVAN, J. The plaintiff appeals from the decision and order for judgment of a justice in a trial without jury.

Plaintiff had recovered a final judgment against Jerome A. Dostie for bodily injuries negligently inflicted upon the former by the latter. That judgment remained partially unsatisfied and plaintiff commenced this action against the defendant, insurer of Dostie when those injuries had been perpetrated, to have the insurance money applied to the satisfaction of the judgment against Dostie. R. S., c. 60, § 302 and § 303 as amended.

Plaintiff in his suit against Jerome A. Dostie had asserted and a jury had found that plaintiff had been a passenger in an automobile operated upon the public highway by Francis Dostie, brother of Jerome, and that plaintiff had been injured as a consequence of the car in which he was riding having been forced off the highway and upset as a proximate result of the negligent operation of another motor vehicle simultaneously driven on the same public way by Jerome A. Dostie, defendant's assured.

Subsequent to the road mishap the insured, Jerome A. Dostie, signed a report to this defendant, his insurer, informing defendant that when the car in which the plaintiff was riding left the highway and became wrecked the automobile controlled by Jerome A. Dostie was away from the public highway, was at rest in the yard of a garage and was "nowheres near road." Until subjected to cross examination at the tort trial Jerome Dostie by reiteration re-

mained constant in his stated representation to the Defendant. In the presence of the jury throughout direct and redirect questioning Jerome Dostie staunchly asserted that his car had not been a factor in the accident but had remained stationary and sequestered from the public way.

Plaintiff was injured on April 9, 1960. On February 12, 1961 Jerome Dostie advised his insurer, this defendant, as follows:

> "On April 9, 1960, my brother and I had been having trouble with our cars. My car is my own, but my brother's is owned by my father, Albert J. Dostie. We were taking the cars to Maine Hydraulic Jack Company, on Route 4, Auburn. He was supposed to meet me there. I arrived first and pulled into the Company's driveway. My uncle, Larry Foisy, manager of the company, directed me to move my car, which I did.

> "I was sitting in my car talking to my uncle who was standing in the driveway. Suddenly, we saw the car driven by my brother run off the left side of the road and turn over. My uncle and I ran over across the street to see if anyone was hurt ----"

At the jury trial in the action of this plaintiff versus Jerome Dostie, in September, 1961, Jerome Dostie testifying in his own behalf under direct examination and again to redirect questioning confirmed the narration quoted above. But upon cross examination Jerome Dostie answered in significant part as follows:

(Conversation of Jerome Dostie with this plaintiff at the scene of and a few minutes after the accident)

> "Q. Did you make any comment to Roland (plaintiff) about, 'Roland, please don't tell them I backed out into the road?'
> A. Not that I can remember.

Q. Not that you can remember.

A. No.

Q. But you might have said it.

A. I might have."

(During visit of Jerome Dostie with plaintiff at hospital)

"Q. Did you hear Mrs. Camire's (wife of plaintiff) testimony? I assume when you visited, that in her presence at the hospital, you did ask Roland (plaintiff) not to tell the officer (State Police Officer) that you had backed the car out into the driveway?

A. Yes.

Q. All right. Did (sic) you again — did (sic) you acknowledge making that remark right now?

A. Yes.

Q. All right. Now, Jerome, have you at any time, and your answer is very important, have you at any time ever told the story to anyone else apart from Roland and Mrs. Camire, that the accident happened because you backed into the highway and Francis was coming too fast?

A. No, I have not.

Q. You have not. And you want to leave it with this Court and jury, and them (sic) and women, you have never told anyone that story.

A. Not to my knowledge.

Q. What do you mean, not to your knowledge? Have you or have you not?

A. Not that I can remember.

Q. Well, do you think you might have told it and forgotten it?

A. No."

At the jury trial against Jerome Dostie the plaintiff maintained and presented evidence to prove that Jerome Dostie on April 9, 1960 had backed his car out of the garage driveway and onto the public highway and had thereby forced the automobile operated by his brother Francis off the highway to the injury of the plaintiff. Prior to that trial this defendant had known of such contentions of the plaintiff as to Jerome's negligent actions. Plaintiff's explanation of the causes and effects constituting the casualty was elicited in brief at the pretrial conference and indicated in the pretrial order.

The casualty policy issued by the defendant and insuring Jerome Dostie contains these stated conditions:

> "The insured shall co-operate with the Company and upon the Company's request, attend hearings and trials and assist in making settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance - - - - - - "

> "No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy."

> "In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable" - - - - - - - -

During the jury trial Francis Dostie, brother of Jerome, testified that Jerome's car was not upon the highway at the

time of the accident and did not contribute to the mishap. Jerome told defense counsel supplied to him by the defendant here that his, Jerome's insistence upon his nonparticipation in the accident was correct and could in no way be shaken. He denied the objective truth of plaintiff's testimony that his, Jerome's car was upon the highway or was a cause of the unfortunate and injurious incident. Jerome continuously spoke assurance that he had never discussed the casualty with the plaintiff.

Defendant in the case at bar urges *inter alia* the defense of fraud practiced against it by its assured, Jerome Dostie, before and during the jury trial.

After the cross examination of Jerome Dostie hereinbefore quoted defense counsel furnished to him by this defendant for the jury trial continued his professional participation in that cause to the moment of the returned verdict and thereafter through the post trial procedure of pursuing to a ruling both a motion for a judgment *n.o.v.* and a motion for a new trial. Defense counsel was successful in achieving a remittitur of $4,000 from the verdict on October 19, 1961. On October 23, 1961 defense counsel withdrew from the case and advised plaintiff's counsel that the defendant repudiated all obligation to indemnify Jerome Dostie against plaintiff's awarded judgment.

Plaintiff here contends that defendant has demonstrated no vitiating fraud, no lack of cooperation upon the part of Jerome Dostie with his insurer and that even were the facts not so the persistence of defense counsel without reservation in functioning at the jury trial subsequent to the cross examination of Jerome Dostie and even unto an exhaustion of post verdict motions is imputable to this defendant as a waiver by it of its right to disavow liability to indemnify Jerome Dostie.

The case at bar was instituted under the provisions of R. S., c. 60, § 302 and § 303 amended.

"Sec. 302. The liability of every company which insures any person - - - - against accidental loss or damage on account of personal injury or death or on account of accidental damage to property shall become absolute whenever such loss or damage, for which the insured is responsible, occurs; and the rendition of a final judgment against the insured for such loss or damage shall not be a condition precedent to the right or obligation of the insuring company to make payment on account of such loss or damage."

"Sec. 303 amended. Whenever any person, - - - - recovers a final judgment against any other person, - - - - - for any loss or damage specified in section 302, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action in his own name, against the insuring company to reach and apply said insurance money, provided when the right of action accrued, the judgment debtor was insured against said liability and that before the recovery of said judgment the insuring company had had notice of such accident, injury or damage. The insuring company shall have the right to invoke the defenses described in this section in said proceedings. None of the provisions of this paragraph and section 302 shall apply:

I. - - - When the automobile, motor vehicle or truck is being operated by any person contrary to law as to age or by any person under the age of 16 years where no statute restricts the age; or

II. - - - When such automobile, motor vehicle or truck is being used in any race or speed contest; or

III. - - - When such automobile, motor vehicle or truck is being used for towing or propelling a trailer unless such privilege is indorsed on the policy or such trailer is also insured by the company; or

IV. - - - In the case of any liability assumed by the insured for others; or

V. - - - In the case of any liability under any workmen's compensation agreement, plan, or law; or

VI. - - - **Fraud or collusion.** When there is fraud or collusion between the judgment creditor and the insured." - - - - - - - - -

The statutory texts quoted were enacted quite verbatim by our Legislature as P. L., 1927, c. 146. The 1927 Legislative Record yields no commentary as to the prior law, mischief or objective remedy occasioning the legislation. The statutes after their enactment normally constituted a part of each contract made thereafter in Maine and providing casualty insurance liability or indemnity such as that featured in this case. *Sullivan* v. *Insurance Co.*, 131 Me. 228, 230; *Lorando* v. *Gethro*, 228 Mass. 181, 187; Williston on Contracts, 3rd ed., § 615.

Historically, our statutes here considered were successive in time to Statute 1914, c. 464, §§ 1 and 2 of the Massachusetts laws, extant as Anno. Laws of Mass., c. 175, §§ 112, 113. By 1917 the Massachusetts Court had construed and interpreted the parent statute of 1914 in the familiar decision of *Lorando* v. *Gethro*, 228 Mass. 181, 117 N. E. 185 and had held, amongst other tenets that:

P. 185 "This clause (the liability of the insurance company shall become absolute) - - - leaves open for determination the question whether the policy of insurance covers the casualty in issue, or whether otherwise the insurer is liable to the assured. It does not prohibit any ground of defense which ordinarily would be open to an insurer in an action brought against it by the insured on the policy. - - - - - "

See, also, *McCarthy* v. *Rendle*, 230 Mass. 35, 119 N. E. 188 (1918); *Kana* v. *Fishman*, 276 Mass. 206, 176 N. E. 922 (1931); *Goldberg* v. *Insurance*

*Co.*, 279 Mass. 393, 400, 181 N. E. 235 (1932);
*Sheldon* v. *Bennett*, 282 Mass. 240, 184 N. E. 722;
note, 46 Harvard L. Review, 1325.

But our Legislature in adopting P. L., 1927, c. 146 subsequent to the 1914 Massachusetts law and the judicial pronouncements of *Lorando* v. *Gethro, supra,* and of *McCarthy* v. *Rendle, supra,* preferred to promulgate its statute with a detailed enumeration of the defenses available to an insurer. P. L., 1927, c. 146, § 4, R. S., c. 60, § 303, amended.

This court said in *Laforge* v. *Insurance Co.* (1941), 137 Me. 208, 212, in reference to the defenses—"conditions"— presently listed in R. S., c. 60, § 303, amended:

> "The statute *R. S. Chap. 60, Sec. 177*, makes the liability of an insurer absolute except under the conditions set forth in Sec. 180. Fraud and collusion constitute a statute designated defense
> - - - - - -
>
> " - - - - As there is no relation of trust between the assured and the insurer, the general rule obtains that he who asserts fraud must prove it by clear and convincing evidence - - - - - - "

In *Colby* v. *Ins. Co.* (1935), 134 Me. 18, 26, this court quoted with approval from *Francis* v. *London, G. & A. Co.,* 100 Vt. 425, 430, 138 A. 780, 781, as follows:

> "It has come to be well established in the law of insurance that forfeitures of policy contracts are not favored and that to avert the same courts are always prompt to lay hold of any circumstance that indicates an election to waive a forfeiture already incurred - - - - "

Amongst the defenses catalogued in R. S., c. 60, § 303, amended, lack of mere or simple cooperation is not to be found:

> "**Sec. 180, Chap. 60, R. S.,** 1930, (presently incorporated in *R. S. c. 60 § 303* amended) enumer-

ates certain defenses open to the insured in cases such as this, among which lack of cooperation does not appear but fraud or collusion between the judgment creditor and the insured is included. The two defenses are not synonymous. Lack of cooperation may include fraud or collusion or may consist simply in refusal to act." *Medico* v. *Assurance Corp.* (1934), 132 Me. 422, 426.

In the same opinion the court continued as follows:

P. 426. "In the instant case, the defense is based on comparison between a statement made to an investigator by the insured and testimony given by him in the trial of the tort cases, which it is alleged reveals inconsistencies and contradictions only to be accounted for by wrongful intent on the part of the insured. If the evidence warranted such a conclusion, fraud or collusion would be proven. The giving by the insured of intentionally false testimony, material in its nature *and prejudicial in its effect,* would be good ground for releasing the insurer from liability." (Italics supplied.)
P. 427. " - - - - to escape liability, the insurer must show that the variances between different statements of the insured *resulted in substantial prejudice and injury - - - - - -* "

In the tort action and prior thereto there was no collusion between the judgment creditor, plaintiff, and the insured, Jerome Dostie, but quite to the contrary this plaintiff resisted Dostie's collusive overtures. The testimony of this plaintiff and that of Jerome Dostie in the tort trial save for Dostie's cross examination were contrary and antithetical. Jerome Dostie before and during that trial apart from his replies under cross examination had however notably and designedly dishonored his relation of candor and cooperation with the defendant insurer and had knowingly falsified to this defendant his blameworthy involvement in the accident. Such behavior was fraudulent and this defendant must be deemed to have demonstrated affirmatively such

fraud upon this record here by clear and convincing evidence.

In the instant case there were supplied to the presiding justice pleadings, stipulations, exhibits and a printed report of testimonial evidence which had been elicited at the prior, jury trial. The justice was not privileged to observe or hear any of the witnesses who testified. *Mellen* v. *Mellen*, 148 Me. 153, 157; *Allen* v. *Kent*, 153 Me. 275, 276.

Upon the record before us despite the fraud perpetrated by the insured upon the insurer damage resulting therefrom to the insurer has not been manifested. *Dubovy* v. *Woolf*, 127 Me. 269, 272. In no regard is it perceptible that the insurer would conscionably have fared better monetarily had its assured been forthright with it. There has been no demonstration that the insurer defendant could or would have savingly and equitably compromised the tort claim or that the insurer's defense of the insured could have been more effectively and withal creditably conducted had the insured seasonably communicated the objective truth to his insurer. There is no tenable or confident reason to opine that the result of the jury trial would have been a verdict of not guilty had Jerome Dostie been candid all the while with his insurer. There is no inducive cause in this case to believe that the ultimate and rectified verdict in the tort action was not a commensurate and just financial compensation for this plaintiff's injuries. That truth is especially authenticated by the mature consideration of the controverted jury verdict both in respect to its propriety and its subsequent measured mitigation in amount of damages by the learned justice who administered the jury trial. The insurer's experience with its mendacious assured was distressing but the falsification itself under the circumstances of the tort action produced no demonstrated or aggravated damage. Rather, as here, in the absence of evidence which could fairly entitle it to exoneration the in-

surer, a paid and professional surety, should respond in damages to this plaintiff who was guiltless of wrongdoing, to such extent within the limit of the insurance policy and the unpaid balance of the court judgment as the negligently inflicted injuries of the plaintiff have been adjudged to warrant and as this defendant had empirically and contractually obligated itself to satisfy. Our "reach and apply" process has been an equitable concept and remedy since the original P. L., 1927, c. 146, § 2.

This defendant further contests its liability in this case for the asserted cause that the assured did not give to it notice of the accident within the period required by the insurance policy. Such defense is affirmative in nature. *Colby* v. *Ins. Co., supra.* It does not expressly appear in the record that the contract of insurance was made in this State but counsel have implied and indicated by their arguments that the policy was issued in Maine. The policy is dated June 27, 1959 at a time when R. S., c. 60, § 303 was in force. The trial in the tort action took place and the judgment was entered in September, 1961. The attorney furnished to Jerome Dostie by this defendant conducted Dostie's defense throughout the trial. R. S., c. 60, § 303 decisively ordains that notice to an insurer is sufficient:

> " - - - - provided - - - - that before the recovery of said judgment the insuring company had had notice of such accident, injury or damage - - - - "

Following Jerome Dostie's despoiling cross examination at the jury trial his attorney afforded to him by this defendant insurer reexamined Dostie and persisted in such defense rôle for the duration of the trial and the postlude of motions without at any juncture endeavoring to withdraw from his assignment or disclaim and without undertaking to subject Dostie to reservations as to the liability of defendant insurer.

Verdict was rendered and judgment ordered thereon in the tort action on September 15, 1961. September 18, 1961 the counsel supplied to Jerome Dostie by this defendant insurer filed a motion for judgment *n.o.v.* and a motion for a new trial. Hearing upon the motions was had on September 25, 1961. October 19, 1961 the presiding justice granted a conditional remittitur of $4,000 from the verdict. October 20, 1961 by docket entry counsel so supplied to Dostie withdrew from the tort case and orally informed Camire's counsel of such withdrawal. October 23, 1961 the defense counsel wrote to Camire's attorney confirming the withdrawal and on behalf of this defendant insurer disclaimed liability "under the policy to indemnify Jerome Dostie in this matter." The record in the case does not divulge whether withdrawing counsel apprised Jerome Dostie of the withdrawal or of the disclaimer. November 14, 1961, by or on behalf of Camire a consent to the order of remittitur was docketed.

The two following quotations are approved in *Colby* v. *Ins. Co.*, 134 Me. 18:

> @ 25 " - - - - The insured loses substantial rights when he surrenders, as he must, to the insurance carrier the conduct of the case - - - - "

> @ 27 " - - - - The loss of the right to control and manage one's own case is itself a prejudice - - - - "

It must be observed that the tort trial plight of defense counsel and of this defendant insurer was engendered by Dostie's iniquities. Nevertheless, *arguendo,* were the grievances of the defendant insurer of a gravity to justify disclaimer, defendant availed itself of no communicated decision to disclaim for some 35 days after the verdict.

> " - - - - The company, however, could not, after having acquired information sufficient to warrant a disclaimer, continue in defence of the action and, upon the rendition of an adverse verdict, then for the first time rely upon such information and with-

draw. It was bound to exercise good faith and diligence." *Klefbeck* v. *Dous,* 302 Mass. 383, 387.

" - - - - Here, however, the corporation, after the breach of the condition came to its knowledge, persisted in the control and conduct of the trial to its conclusion without demur - - - - - - It cannot now be heard to disclaim liability." *Barbeau* v. *Koljanen,* 299 Mass. 329, 333.

The prolongation of defense counsel's service without reservation, disclaimer or change of capacity in the jury trial after the cross examination of Dostie, apart from commendable motives of professional loyalty and constancy, was for Dostie not indisputably beneficial. True the insurer's attorney sought and achieved a remittitur. But as to pragmatic utility it must remain speculative whether Dostie bereft of an insurance subsidy, by his own exertions or with the aid of chosen counsel, might not have acquired a release for a very modestly realistic sum. Dostie without a financially responsible insurer would undoubtedly suffer very materially in the financial estimation of a plaintiff. Moreover Dostie presently finds himself confronted with the threat, at least, of the hardships of the Financial Responsibility Law, R. S., c. 22, §§ 75-82, as amended.

It was not for the defendant insurer to linger in chancing a verdict and thereafter to benefit by a successful judgment or in the alternative to deny coverage in the event of a plaintiff recovery. Jerome Dostie despite his culpability was entitled to seasonable notice of disclaimer. Defendant's conduct constituted waiver.

The mandate must be:

> *Appeal sustained.*
> *Judgment vacated.*
> *Cause remanded to Superior Court for further consideration in accordance with this opinion.*