Mrs. Joseph Wilmer **ALPHONSE** et al., Plaintiffs-Appellants,

v.

W. M. **KINNER TRANSPORT CO.** et al., Defendants-Appellees.

Mary Trich **ZWEIFEL** et al., Plaintiffs-Appellants,

v.

David Charlie **PHARRIS** et al., Defendants-Appellees.

Tyrell T. **MANIERI**, Plaintiff-Appellant,

v.

W. M. **KINNER** et al., Defendants-Appellees.

No. 71–1305.

United States Court of Appeals, Fifth Circuit.

Nov. 4, 1971.

Rehearing Denied Dec. 13, 1971.

Owen J. Bradley, the Law Offices of Steven R. Plotkin, Frank O'Halloran, Jr., New Orleans, La., for Alphonse and others.

Charles R. Maloney, New Orleans, La., for Zweifel and others.

Joseph B. Stahl, Curtis R. Boisfontaine, New Orleans, La., for Manieri.

Richard L. Bodet, Paul V. Cassisa, Bernard, Micholet & Cassisa, New Orleans, La., for Hartford Accident and Indemnity Co.

Dan Garner, New Orleans, La., for W. M. Kinner Transport Co.

James L. Donovan, New Orleans, La., for Millers Mutual Ins. Co.

Before RIVES, AINSWORTH and GODBOLD, Circuit Judges.

PER CURIAM:

The appended opinion of Judge Boyle is adopted as the opinion of this Court, and the judgment is

Affirmed.

## APPENDIX

This matter came on for hearing before the Court on the motion of the defendant, Hartford Accident and Indemnity Company, for summary judgment.

These consolidated actions arise out of the collision on or about July 31, 1968, at approximately 11:45 a. m. in Natchitoches Parish, Louisiana, of a 1958 International Truck tractor, pulling a pole trailer, loaded with poles under contract with the C. R. Knotts Company, and a vehicle driven by one Tyrell T. Manieri in which Louis Zweifel and Joseph Alphonse, decedents, were passengers. The tractor was being driven by David Charlie Pharris, an employee of W. M. Kinner, d/b/a W. M. Kinner Transport Company.

The plaintiffs argue that Policy No. 61 GB 592470, issued to Kinner by mover, to be effective as of 12:01 a. m. February 25, 1968, provided coverage for this accident. The original policy was produced and offered in evidence by defendant, Kinner, the insured thereunder.[1]

---

1. In support of his motion, counsel for Hartford annexed a certified copy of the policy in question. The copy was challenged by the plaintiffs because the policy indicated Endorsement 111D was in effect, although the attached endorsement bore # 110D. A second certified copy of the policy indicating Endorsement # 110D was then furnished by Hartford. Counsel for the plaintiffs urged that this typographical error in the first policy created an issue of fact precluding summary judgment; however, form # 110D proved to be no more than a long-haul trucking exclusion of coverage in certain designated areas, none of which were, in fact, excluded by the company or relevant to the instant action. Counsel for Kinner, at the second hearing on this motion, produced Kinner's copy of the policy, which includes the following endorsements:

1) Form 45—fleet schedule describing insured vehicles (neither the 1958 trac-

The mover denies coverage on the ground that the policy specifically excludes coverage of any Kinner vehicle under coverages A and C, "while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; * * * "[2]

The pole trailer involved in the accident herein was purchased by Kinner approximately four months prior to the date of the accident.[3] Kinner testified under oath on his deposition that the trailer had been used approximately 15 times with a 1965 International truck tractor,[4] and was attached to the 1958 International truck tractor at the time of the accident.[5]

It is not disputed by counsel for the plaintiffs that the policy's fleet schedule names neither the pole trailer nor the 1958 International trailer as insured vehicles.[6] Further, Mr. Kinner himself admitted under oath that the pole trailer was NEVER insured under the Hartford policy.[7] Kinner gave testimony earlier in his deposition that further strengthened the premise that the trailer in question was not covered, for at page 26, lines 20–27, he admitted that after he knew that something had happened and that an accident had occurred, he called his insurance agent in a futile attempt to get insurance coverage on the truck and trailer effective at midnight the night before. This request was made between 2:30 and 2:40 on the afternoon of the accident.[8]

Counsel for the plaintiffs herein made several arguments as to coverage of the tractor. Studiously avoiding the exclusion of coverage based on the lack of trailer insurance, counsel for the plaintiffs, in memoranda and supplemental memoranda, advanced several theories under which the 1958 tractor alone might be covered. The plaintiffs would classify the tractor as a newly acquired automobile, a replacement vehicle, and/or a temporary substitute vehicle. Assuming, *arguendo*, that such bases for coverage of the tractor are tenable, coverage is nonetheless excluded because under no theory is the trailer an insured vehicle, and exclusion (c) specifically provides that failure to insure such a trailer operates to cancel coverage on the towing vehicle while the uninsured trailer is attached thereto.

Plaintiffs, faced with exclusion (c), then sought coverage under Endorsement 77, the Texas Railroad Commission Form. That endorsement provides in pertinent part,

"The obligations and promises of this endorsement shall be effective only while the automobiles covered by this policy are being operated within the boundaries of the State of Texas. The coverage granted by this endorsement also applies to automobiles, trucks and trailers belonging to or under the direction of the named insured and not particularly identified in this policy, while the same are being used in the business of carrying property for hire or compensation * * * [for injuries] occurring during the term of said policy through such operation of such trucks and trailers with-

tor nor the trailer is scheduled therein).

2) Form 112A—loss payable clause naming the Lufkin National Bank, as its interest may appear.

3) Form 110D—the aforementioned long haul truckmen's exclusion of designated areas.

4) Form 77—motor vehicle endorsement—Texas Railroad Commission.

5) Form 230—Family protection against uninsured motorists.

2. Exclusions, page 3, paragraph (c), policy.

3. Deposition of W. M. Kinner, page 55, lines 24, 25; page 56, lines 1–3.

4. Deposition of W. M. Kinner, page 56, lines 8–16.

5. Deposition of W. M. Kinner, page 56, lines 21–24.

6. Policy No. 61 GB 592470, "Fleet Schedule," Form 45.

7. Deposition of W. M. Kinner, page 56, lines 21–25; see also same deposition, at pages 54, ll. 16–20, 54, l. 25, and 55, ll. 1–4.

8. Deposition of W. M. Kinner, page 60, ll. 18–21.

in the boundaries of the State of Texas."

Plaintiffs' reliance on this provision of Endorsement 77 is patently misplaced, for the endorsement clearly states, without ambiguous language, that this endorsement does not apply to operation of the vehicle outside the boundaries of the State of Texas.[9] In the face of the clear language of the policy, which is the law between the parties thereto, the tractor and trailer, at the time and place of the accident, were not covered by the Hartford policy.

█ Under the policy in evidence there is no coverage provided for the accident in suit and therefore the motion of the defendant, Hartford Accident and Indemnity Company, for a summary judgment dismissing the claims of the plaintiffs as against this defendant should be and the same is hereby granted.

(Signed) EJB, Sr.

> [Edward J. Boyle, Sr.
> United States District Judge
> Eastern District of Louisiana]

## ON PETITIONS FOR REHEARING

### PER CURIAM:

In the first entitled case, the plaintiffs-appellants complain that there is no reference in the District Court opinion adopted by this Court deciding the issue raised in both courts that Vernon's Ann. Texas Civil Statutes Article 911b, Section 13 makes it mandatory that the insurance policy cover "claims for loss or damages from personal injury or loss of, or injury to property occurring during the term of said * * * policies, and arising out of the actual operation of such motor carrier," while Texas Railroad Commission Motor Vehicle Endorsement Form 77 attached to the policy here involved provides that, "The obligations and promises of this endorsement shall

be effective only while the automobiles covered by this policy are being operated within the boundaries of the State of Texas." The plaintiffs-appellants urge that they are entitled to a decision of their insistence that the limitation of coverage to claims while the vehicles are being operated within the State of Texas is illegal and the policy should be reformed.

We think that Texas Railroad Commission Endorsement 77 conforms in this respect with the Texas Statute when read in the light of the definition of "motor carrier" in Section 1(g) of the same statute. That definition contains a limitation that it applies to operation "over any public highway in this State."

Further, we doubt whether Texas had the power to extend its insurance requirement beyond the State's boundaries, particularly in the light of federal regulation of motor carriers in interstate commerce by Part II of the Interstate Commerce Act, 49 U.S.C. § 301 et seq. That Act provides in part:

"§ 302. *Application of provisions*

　　\*　　\*　　\*　　\*　　\*　　\*

"(b) (1) Nothing in this chapter shall be construed to affect the powers of taxation of the several States or to authorize a motor carrier to do an intrastate business on the highways of any State, or to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof."

█ We hold that the plaintiffs-appellants are not entitled to have the policy reformed to cover claims arising out of operations of the motor carrier beyond the boundaries of the State of Texas.

It is ordered that the petitions for rehearing filed in the above entitled and numbered cause be and the same are hereby

Denied.

---

9. In his supplemental memorandum, counsel for plaintiff, Alphonse, cited this endorsement, selectively excluding all references in the endorsement limiting the effect thereof to operations within the boundaries of the State of Texas.