Joe FLEMING, Plaintiff-Appellee,

v.

**PAN AMERICAN FIRE & CASUALTY COMPANY, Defendant-Appellant.**

No. 73–2285.

United States Court of Appeals, Fifth Circuit.

June 6, 1974.

536

W. Stanley Rodgers, Huntsville, Ala., for defendant-appellant.

Paul L. Millirons, Huntsville, Ala., for plaintiff-appellee.

Before RIVES, WISDOM and MORGAN, Circuit Judges.

**RIVES, Circuit Judge:**

Pan American Fire & Casualty Company (hereafter Pan Am) appeals from an $8,586.00 judgment in favor of Joe Fleming (hereafter Fleming), entered after a trial by the court without a jury. We affirm.

On May 21, 1971, Pan Am issued its motor-truck cargo policy to the named insured William W. Hazelwood (hereafter Hazelwood). It was stipulated that the policy was in force and effect on June 12, 1971, when one of the covered vehicles was involved in an accident. The consequent loss is the subject of this suit.

On appeal, the only substantial question presented is whether Fleming had a direct claim against Pan Am on or arising out of its policy. Fleming's claim was based upon two independent theories: 1. that Fleming had a right to proceed in equity as provided by section 12 of Title 28, Code of Alabama recompiled 1958,[1] either alone or as construed in connection with the preceding section 11 of the same title;[2] 2. that Fleming had become a third-party beneficiary

under the terms of the policy itself. Each theory presents a close and difficult question. The district court held with Pan Am under the first theory, but with Fleming under the second. Following the same order of consideration, we conclude that Fleming had a · claim against Pan Am based upon either or both theories. We therefore affirm the judgment of the district court.

On June 11, 1971, Hazelwood was employed by contract made in Texas[3] to haul sixty-five Hereford heifer cattle, the property of Fleming, from Henrietta, Texas, to Madison County, Alabama. The truck was loaded on June 11 and started its movement into Alabama. It was involved in an accident on June 12, 1971, at a point in Alabama about twenty-two miles north of Tuscaloosa, when it struck a tree and burned. Thirty-six head of cattle were either killed or so injured as to render death immediately necessary within the coverage of the policy.

On July 19, 1971, Fleming filed suit against Hazelwood. On September 17, 1971, an agent of Pan Am completed the

---

1. "**§ 12.** *Remedy of injured party after recovering judgment.*—Upon the recovery of a final judgment against any person, firm, or corporation by any person including administrators or executors, for loss or damage on account of bodily injury or death, or for loss or damage to property, if the defendant in such action was insured against said loss or damage at the .time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurance company and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

2. "**§ 11.** *Liability of insurance companies on casualty risks; when absolute.*—In respect to every contract of insurance made between an insurance company and any person, firm or corporation, ·by which such

person, firm or corporation is insured against loss or damage on account of the bodily injury or death by accident of any person, for which loss or damage such person, firm or corporation is responsible, whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage, or death, occasioned by said casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void."

The two sections as amended effective January 1, 1972, now appear as Title 28A, §§ 484 and 485.

3. In stating the facts, we accept as true the findings of the district court. See Rule 52 (a), F.R.Civ.P.

blanks in a proof of loss and presented it to Hazelwood for his signature. Such proof of loss was signed by Hazelwood before a Notary Public and returned to Pan Am's agent. That proof was accepted by Pan Am as sufficient under the terms of the policy. On September 24, 1971, Pan Am issued its draft in the sum of $2,400.00 payable to Hazelwood and City National Bank of Wichita Falls, Texas.[4] The face of the draft contained the inscription, "Nature of payment 13 head yearling heifers killed." On the back of the draft appeared the following:

"All parties to whom this draft is made payable must endorse it properly (in ink) or the draft will not be paiu

\* \* \* \* \* \*

"Endorsement of this draft by payee or payees is acknowledgment of full settlement, satisfaction, compromise, and discharge of all claims and demands of every nature and kind arising from the loss or accident described on the face hereof and shall apply to all unknown unanticipated injuries or damages as well as those now disclosed."

Underneath that inscription the draft was endorsed by Hazelwood and the said City National Bank, and it was then paid by the bank upon which it was drawn, and thereafter by Pan Am.

On October 24, 1971, Fleming obtained a judgment by default against Hazelwood in the amount of $14,525.00. That judgment remains unpaid. Fleming received none of the proceeds of the policy of insurance paid by Pan Am to Hazelwood and the City National Bank. Subsequent to that payment, Hazelwood was adjudicated a bankrupt and as against him Fleming's judgment was discharged in bankruptcy. Fleming's present action against Pan Am was commenced on January 7, 1972.

## I.

We consider first whether Fleming had a direct claim against Pan Am based on section 12 of Title 28 of the Alabama Code,[5] either by its own terms or as construed in connection with the immediately preceding section 11.[6]

The district court held as follows:

"This Court rejects plaintiff's contention that by resort to the rule of *in pari materia*, the right created by the Code of Alabama, Tit. 28 § 11 (Recomp.1958), should be imported into the provisions of Section 12 which provides a remedy only. When Section 12 was amended in 1953 by extending the remedy of an injured party to include judgments 'for loss or damage to property,' Section 11 was left undisturbed. Failure to amend Section 11 may have been due to legislative inadvertence, on the one hand or, on the other, to a deliberate choice, in the imposition of absolute liability, to differentiate between easily determinable bodily injury or death and loss or damage to property, which might involve a bundle of various rights. For a full discussion of this cannon [sic] of statutory construction, see Erlenbaugh v. United States, 409 U.S. 239, [93 S.Ct. 477, 34 L.Ed.2d 446], 41 L.W. 4081, decided December 12, 1972. In view of the conclusion of the Court that plaintiff was entitled to maintain a direct action on the policy in suit, further discussion of the interplay of Sections 11 and 12 would be purely academic."

(App.23.)

For the reason stated by the district court in the last sentence, *supra*, we could forego deciding the question now under consideration. We are persuaded otherwise by two considerations: (1) As hereafter developed Fleming's right to maintain a direct action under

---

4. The record does not explain why this Bank joined in executing the proof and was made joint payee in the draft.

5. Quoted in n. 1, *supra*.

6. Quoted in n. 2, *supra*.

the terms of the policy itself is not entirely free from doubt;[7] and (2) we disagree with the district court's positive conclusion of law, heretofore quoted, and our failure to indicate our disagreement might tend to confuse litigants as to our conception of the jurisprudence until such time as the Supreme Court of Alabama has occasion authoritatively to construe the statutes involved.

■ Preliminarily, we note that the present diversity action was brought in a federal district court located in Alabama, so that we must look to Alabama law, including Alabama's law of conflicts, in deciding the nonfederal issues in this case. Klaxon Co. v. Stentor Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477.

■■ In light of *Klaxon*, the applicability and construction of section 12, either alone or in connection with section 11, must be determined in accordance with the law of Alabama. In Macey v. Crum, 1947, 249 Ala. 249, 30 So. 2d 666, the Supreme Court of Alabama held that at least as to a policy insuring the named insured against liability, as distinguished from indemnity against loss,[8] sections 11 and 12 applied without regard to whether the insurance contract was made in Alabama or not, and without regard to whether the named parties to the contract of insurance were residents or nonresidents of Alabama. The Alabama Supreme Court held that, "The lex loci controls the validity and construction of the contract but the lex fori operates on the remedy to enforce it." 30 So.2d at p. 669.

The opinion in that case is highly instructive as to the nature of the remedy provided by sections 11 and 12.

"This court has held that said § 12 and § 11, preceding, when construed together, are more than procedural in character and give the injured party a vested interest (secondary) by way of hypothecation in the amount due the insured by the insurer after the rendition of the judgment against the insured. George v. Employers' Liability Assur. Corporation, 219 Ala. 307, 122 So. 175, 72 A.L.R. 1438; Lorando v. Gethro, 228 Mass. 181, 117 N.E. 185, 1 A.L.R. 1374, 1378.

\* \* \* \* \* \*

"\* \* \* the procedure provided in § 12 impairs no contractual obligation and affects no substantive right under the contract of insurance pleaded. It merely provides a remedy for enforcing the agreement of the insurer to pay the damages contracted by the policy to be paid. The statute is a replica of the Massachusetts statute and, following the customary canon of construction, we have adopted the interpretation accorded the statute by the Massachusetts Supreme Court. Globe Indemnity Co. v. Martin, 214 Ala. 646, 108 So. 761; George v. Employers' Liability Assur. Corporation, supra; Continental Auto Ins. Underwriters v. Menuskin, 222 Ala. 370, 132 So. 883. The Massachusetts court ob-

---

7. We recognize that any such doubt is, at least for the present, removed by this Court's decision, subject to review on rehearing either by the panel or by an en banc court. There is little chance of the Supreme Court's granting certiorari in a diversity case like this. In the event of a reversal of our decision that Fleming became a third-party beneficiary under the terms of the policy itself, consideration might be given to ' proceeding under the authority of the Judicial Article, adopted in December 1973 as an amendment to the Alabama Constitution, for an authoritative construction by the Supreme Court of Alabama of the statutes here involved. See recent discussion of this certification procedure in Lehman Brothers v. Schein, 1974, —— U.S. ——, 94 S.Ct. 1741, 40 L.Ed.2d 215 at footnotes 5, 6, 7 and 8 and related text.

8. The basic policy involved in this case covered the legal liability (R. pp. 12 and 13) of Hazelwood for loss or damage to shipments of livestock, including loss due to collision of the vehicle and loss due to fire, within a radius of 1000 miles of Wichita Falls, Texas. The place in Alabama where the accident occurred and the cattle were killed or fatally injured lies well within such a radius.

served in Lorando v. Gethro, supra, that the statute 'does not enlarge or modify in any respect the substantial liability created by the contract of insurance. It merely enables the person suffering the initial damages, out of which grows the loss to the insured, to acquire a lien against the loss and the right to damages or indemnity arising under the policy, and to enforce it in his own name.' 228 Mass. at page 187, 117 N.E. at page 188, 1 A.L.R. 1378.

"The equitable remedy thus afforded to collect the judgment debt partakes of the nature of an equitable garnishment, whereby the judgment creditor may collect his judgment from one who owes the judgment debtor and has agreed to pay the liability imposed by the judgment. The authorities are general that one who recovers a judgment for damages may garnish the judgment defendant's claim on a policy or agreement insuring him against liability (as distinguished from indemnity against loss) for damages of the kind recovered against him by the plaintiff * * *."

30 So.2d 667, 668.

The remedy provided by section 12 can be exercised only after the injured or damaged party has recovered final judgment against the insured, and only "if the defendant in such action was insured against said loss or damage at the time when the *right of action* arose." (Emphasis added.) Clearly, "right of action," as there used, refers to the right of action against the named insured instead of that against the insurer. It also seems clear that either in connection with section 11, or alone, section 12 gives rise to a lien or vested interest on the part of the damaged or injured person by way of hypothecation in the amount due the insured under the terms of the policy. Fleming having acquired such a lien or vested interest, the insurer could not defeat his right of action by its settlement with the named insured. That much follows from the teachings of Macey v. Crum, *supra,* and is borne out by the interpretation accorded the replica of the Alabama statutes by the Massachusetts Supreme Court in Lorando v. Gethro, 1917, 228 Mass. 181, 117 N.E. 185, 1 A.L.R. 1374.

Notwithstanding the amendment of section 12 to include judgments "for loss or damage to property" and the failure to similarly amend section 11, we think that section 12 must be construed and applied in the light of section 11. It would be anomalous if section 12 provided a different remedy in the case of a judgment for loss or damage to property from that provided in the case of a judgment for loss or damage on account of bodily injury or death. In both cases, the two sections should be construed together. The construction adopted by the district court almost emasculates the statute in the case of a judgment for loss or damage to property. Its construction limits the effect of the statute so that it merely adds a right to proceed in equity to the then existing right to proceed at law by issuing a writ of garnishment to collect the judgment against the named insured. The right to collect by garnishment at law exists independently of sections 11 and 12. See Macey v. Crum, *supra,* and the many cases cited at 30 So.2d 668. See also Royal Indemnity Co. v. Pearson, 1971, 287 Ala. 1, 246 So.2d 652, 654, and the cases there cited.

Even if section 12 stood alone, it would require a construction which would reach practically the same result as if it were construed with section 11. Indeed, that is the most likely explanation of the failure of the Alabama Legislature to amend section 11 so as to expressly require its application to include judgments "for loss or damage to property." Standing alone, section 12 provides:

" * * * if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor

shall be entitled to have the insurance money provided for in the contract of insurance between the insurance company and the defendant, applied to the satisfaction of the judgment * * *."

Thus the right of the judgment creditor relates back to the time when his right of action arose but his right is, of course, limited to "the insurance money provided for in the contract of insurance." Grounds of defense which would be open to an insurer in an action brought by the named insured,[9] would be open to the insurer in a section 12 proceeding in equity brought by the judgment creditor. On the other hand, grounds of defense sought to be created by the insurer subsequent to the accident and loss [10] would not be available in a section 12 proceeding in equity.

We hold that Fleming had a direct claim against Pan Am based on section 12 of Title 28 of the Alabama Code.

## II.

We agree with the district court that Fleming had become a third-party beneficiary under the terms of the policy itself. That was the theory supported by Alabama cases which this Court had followed in Pennsylvania Thresherman & F. Mut. Cas. Co. v. Crapet, 1952, 199 F. 2d 850, 853, 854:

"The policy of insurance itself provides that any person who has secured a judgment against the insured, liability for which is insured against, 'shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.' It seems clear to us that under the contract a like jurisdiction is conferred upon a court of law as is vested in a court of equity by the statute. See American Fidelity & Casualty Co. v. Werfel, 230 Ala. 552, 162 So. 103, 106; Employers Insurance Co. of Ala-

bama v. Johnston, 238 Ala. 26, 189 So. 58; Macey v. Crum, 249 Ala. 249, 30 So.2d 666; Continental Auto Ins. Underwriters v. Menuskin, 222 Ala. 370, 132 So. 883; Hughes v. Hartford Accident & Indemnity Co., 223 Ala. 59, ·134 So. 461. This Court, therefore, has no authority to review the question of whether the jury's verdict is contrary to the weight of the evidence."

Relying upon the *Pennsylvania Thresherman* case, *supra*, and the Alabama decisions supporting that case, the district court held that the following clauses in Endorsement Form 102–C of the insurance policy afforded Fleming a direct claim against Pan Am as a third-party beneficiary:

"This policy covers the legal liability of the named insured for the loss, of and damage or injury to, property of any character or description while in the possession and/or custody, actual or constructive, of the insured: and a description of the motor vehicles (trucks and/or trailers), terminals, warehouses or other facilities operated or used under or in connection with the permit or certificate is hereby waived regardless of the cause of such loss, damage or injury, excepting however, those causes which are excepted by the common law in·favor of a common carrier's absolute liability, even though the vehicles (trucks and/or trailers), warehouses or terminals or other places of receiving and delivering may not be specifically identified herein.

\* \* \* \* \* \*

"It is also understood, anything in the policy to the contrary notwithstanding that the insurer herein will pay within limits expressed in this endorsement, unless greater limits are specified in the policy or endorsement attached thereto in which event the

---

9. Such, for example, as failure or refusal to cooperate in the investigation or defense of the claim as provided in the policy.

10. Such, for example, as accord and satisfaction with the named insured with or without formal release, cancellation of the policy of insurance, etc.

greater limits shall apply, all damage which may be recovered against the insured, based on the claims for loss of or damage to property during the term of the policy arising out of the actual operation of such motor freight vehicle (truck and/or trailers) or while such property is in the actual or constructive possession and/or custody of the insured without regard to the solvency or insolvency of the insured, and this policy shall not be exhausted by one recovery but sucessive [sic] recoveries may be had hereunder, and the payment of a claim does not reduce the amount of insurance by the sum so paid.

\* \* \* \* \* \*

"No defense which is available to the insurer as against the insured under the provisions of this policy as originally written shall be available to the insurer as against a judgment creditor of the said insured after judgment shall have been rendered against such insured upon any claim for loss of or damage to property growing out of the actual operation of the motor freight vehicle (truck and/or trailers), of the insured or while such property is in the actual or constructive possession and/or custody of the insured, or whether or not, the basic authority granted in the certificate or permit shall have been violated." (R. p. 13.)

Pan Am claims that the district court ignored the two paragraphs of the endorsement which preceded the quoted paragraphs, viz.:

"It is understood that the policy to which this endorsement is attached is to be offered for filing by the named insured with the Railroad Commission of Texas as a condition precedent to the privilege to operate as a motor carrier within the State of Texas under the authority of a certificate of convenience and necessity or a permit heretofore issued, or which may hereafter be issued and in compliance with the provisions of Chapter 314, General Laws of the Forty First Legislature of Texas, 1929, and amendments thereto and all rules and regulations promulgates [sic] or hereafter promulgated thereunder by the Railroad Commission of Texas, and this endorsement is attached for the purpose of making the provisions of the policy conform to the requirements of the law.

"Coverage hereunder applies to all motor freight vehicles (trucks and/or trailers) belonging to or operated by, or under the direction, or in the 'for hire' transportation business of the insured whether particularly identified in this policy or not while the same are being used by the insured in the insured's business of carrying or transporting property for hire or compensation, and coming within the terms of the motor carrier law." (R. p. 13.)

Both parties agree that the Texas motor carrier law is applicable only within the territorial limits of Texas. Pan Am argues that the two paragraphs last quoted show that coverage under Endorsement 102–C would apply only to situations where Texas law requires some such endorsement. The case of Alphonse v. W. M. Kinner Transport Co., 5 Cir. 1971, 452 F.2d 700, 703, discloses Texas Railroad Commission Motor Vehicle Endorsement Form 77 which contains a definite limitation that, "the obligations and promises of this endorsement shall be effective only while the automobiles covered by this policy are being operated within the boundaries of the State of Texas." While the endorsement on the policy here involved shows that it "is attached for the purpose of making the provisions of the policy conform to the requirements of law," there is no explicit statement in the endorsement that its coverage would not extend to an accident such as the one involved in this case, which was well within the 1000 mile radius marking the territorial coverage of the policy (see n. 7, *supra*). To say the least, the endorsement here involved was ambiguous. Under the law of Texas

(where the contract of insurance was made), the endorsement must be interpreted strictly against the insurer and liberally in favor of the insured. Commercial Standard Ins. Co. v. McKissack, Tex.Civ.App.1941, 153 S.W.2d 997, 1000, 1001. So construed, the endorsement covered the insured's operation within the permissible 1000 mile radius even though outside the State of Texas. We hold that, under the terms of the policy including this endorsement, Fleming had become a third-party beneficiary with a direct claim against Pan Am.

The judgment of the district court is Affirmed.